STATE OF NEBRASKA, APPELLEE, V.
JON C. BAUE, APPELLANT.
607 N.W. 2d 191

Filed March 10, 2000. No. S-99-198.

Jim K. McGough, of Copple & Rockey, P.C., for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Jon C. Baue appeals from an order of the district court for Pierce County, Nebraska, which affirmed his conviction for driving under the influence (DUI) of alcoholic liquor, second offense, following a jury trial in the county court for Pierce County. We reverse Baue's conviction and remand the cause for a new trial because of prejudicial error in the admission of certain evidence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 6, 1997, at approximately 1:30 a.m., Baue was stopped for speeding by Nebraska State Patrol Trooper Greg Lammers. At the time of the stop, Baue was driving 79 miles per hour in a 55-miles-per-hour zone on a blacktop county road in Pierce County. Lammers detected a strong odor of alcoholic beverage emitting from the vehicle and observed that Baue had red, watery eyes. When questioned by Lammers, Baue admitted that he had consumed some alcohol.

Lammers then administered six field sobriety tests. Baue failed both a horizontal gaze nystagmus (HGN) test and a pre-

liminary breath test, and passed an alphabet test, a one-legged stand test, a counting backward test, and a walk-and-turn test. Upon completion of the field sobriety tests, Lammers arrested Baue for DUI and transported him to the office of the Pierce County Sheriff for the purpose of administering a breath test utilizing the Intoxilzyer 4011AS testing device. Lammers held a class B permit issued by the Nebraska Department of Health which authorized him to utilize this device to test breath for alcohol content. In administering the test to Baue, Lammers followed a checklist approved and prescribed by a regulation of the Department of Health, 177 Neb. Admin. Code, ch. 1, § 007.04A2 (1990), for infrared absorption analysis using the Intoxilyzer Model 4011AS for breath specimens. When Baue provided the initial breath specimen, the device registered both a digital readout of .12 and an error reading, which required that the test be readministered. Lammers then conducted the test a second time, again utilizing the checklist, and obtained a valid reading of .11.

Prior to trial, Baue filed a motion in limine seeking to exclude all of the Intoxilyzer Model 4011AS test results on various grounds. During a pretrial hearing on this motion, Baue called Dr. John Vasiliades, an expert in toxicology and forensic toxicology, who testified that the Intoxilyzer Model 4011AS has an inherent analytical error of plus or minus .03, so that a reading of .11 could be as low as .08 or as high as .14. The State did not present evidence to rebut Vasiliades' testimony during the pretrial hearing. The county court overruled Baue's motion in limine.

During trial, Baue asserted a foundational objection when Lammers was asked to testify about the result of Baue's first Intoxilyzer test. The county court initially sustained the objection, but later overruled Baue's objection when the question was asked a second time and permitted Lammers to testify that the digital readout was .12. The court then gave the following instruction to the jury with respect to the initial test:

Okay, the test card did not print and an error light came on in the machine. The error light was an indication to the testing officer that there was a problem with that test. So the fact that the officer observed a .12 on the digital read-

out on that machine is not to be considered by you as evidence of the level of intoxication of the defendant at that time because the error light came on. So we had two factors. The error light and the digital readout. No printout on the card. The normal — counsel can correct me if I misstate this. Usual procedure would be to insert the card, have the test administered, breathe into the machine, the machine prints. It also shows a digital readout and that would be the result of the test. But in this case an error light came on. So the testimony is to the one — .12 is not evidence of the defendant's intoxication at that time. Do you all understand that. All right, very good.

Lammers' testimony regarding the result of the second Intoxilyzer test was also admitted over Baue's objection that the results of the test should be adjusted as a matter of law to take into account his expert's testimony that the test was subject to a .03 margin of error. The trial court rejected Baue's argument that the test should be adjusted as a matter of law, but permitted Baue to present the expert's testimony at trial. The State then presented a witness to rebut Vasiliades' testimony.

The jury returned a verdict of guilty, upon which Baue was convicted of second-offense DUI, fined $200, and placed on probation. Baue appealed to the district court for Pierce County, which affirmed. Baue then perfected this appeal, which we moved to our docket pursuant to our authority to regulate the caseloads of the Nebraska appellate courts. Additional facts will be set forth where pertinent to our analysis of Baue's various assignments of error.

## II. ASSIGNMENTS OF ERROR

Baue assigns, renumbered and restated, that (1) the trial court erred in failing to suppress his arrest for lack of probable cause, (2) the trial court erred in failing to grant his motion to dismiss for insufficient evidence, (3) the trial court erred in failing to appoint him an expert witness to testify regarding the scientific acceptance of the HGN test, (4) the trial court erred in failing to adjust the results of his Intoxilyzer test as a matter of law after he presented unrefuted testimony regarding its margin of error, (5) the trial court erred in allowing the State to present evidence of the first Intoxilyzer test that did not print out a test record

card, (6) the trial court erred in allowing the State to pursue a hearing regarding the admissibility of the HGN field sobriety test outside the presence of the fact finder, and (7) the trial court erred in admitting the evidence and testimony pertaining to the HGN test in the absence of foundational testimony to the trier of fact regarding the pertinent scientific principles.

## III. ANALYSIS

### 1. PROBABLE CAUSE FOR ARREST

Baue filed a motion to suppress his arrest and all evidence obtained as a result thereof on the ground that the arrest was accomplished without probable cause. Following a pretrial hearing on this motion at which Lammers testified regarding the events and circumstances leading to Baue's arrest, the county court determined that based upon Lammers' observations of Baue at the time of the traffic stop and the fact that Baue failed the HGN and preliminary breath tests, Lammers had probable cause to arrest Baue for DUI. In making this determination, the court made reference to the fact that the traffic stop occurred at "1:30 in the morning, half hour after the bars close." The district court affirmed, noting the evidence of Baue's speeding, the smell of alcohol emanating from Baue's vehicle, and Baue's failure of the HGN and preliminary breath tests.

In reviewing a trial court's ruling on a motion to suppress, an appellate court reviews the ultimate determination of probable cause de novo and reviews the findings of fact made by the trial court for clear error, giving due weight to the inferences drawn from those facts by the trial court. *State v. Nissen*, 252 Neb. 51, 560 N.W.2d 157 (1997). When a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed a crime, the officer has probable cause to arrest without a warrant. *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997); *State v. Nissen, supra.*

Baue argues on appeal that the county court based its probable cause finding in part upon evidence not contained in the record, i.e., the time when the " 'bars close.' " Brief for appellant at 28. It does not appear that the district court considered this

fact in affirming the probable cause finding, nor do we in our de novo review. We conclude that Lammers' observations at the time of the traffic stop, together with Baue's performance on the HGN and preliminary breath tests, established probable cause for the arrest and that the trial court did not err in overruling Baue's motion to suppress the arrest.

### 2. ADMISSION OF FIRST INTOXILYZER TEST RESULT

■ We next address Baue's contention that the trial court erred in permitting Lammers to testify over objection regarding the digital readout from the first Intoxylizer test administered following Baue's arrest. In *State v. Gerber*, 206 Neb. 75, 291 N.W.2d 403 (1980), *overruled on other grounds, State v. Obermier*, 241 Neb. 802, 490 N.W.2d 693 (1992), this court articulated four foundational elements which the State must establish as a foundation for the admissibility of a breath test in a DUI prosecution: (1) that the testing device was working properly at the time of the testing; (2) that the person administering the test was qualified and held a valid permit; (3) that the test was properly conducted under the methods stated by the Department of Health; and (4) that all other statutes were satisfied. Although *Gerber* involved results from a gas chromatograph intoximeter known as a "Breathalyzer," we held in *State v. Bullock*, 223 Neb. 182, 388 N.W.2d 505 (1986), that the same foundational elements were required to establish the admissibility of breath test results from the Intoxilyzer Model 4011AS.

It is apparent from the record that the first foundational requirement was not met with respect to the .12 result obtained from the initial breath test. Testimony adduced by the State established that when operating properly, the testing device generates both a digital readout and a printed test record card reflecting the alcohol content of the breath sample. When Lammers tested the initial breath specimen provided by Baue, he obtained a digital readout of .12, but no printout on the test record card. As Lammers explained in his testimony, "[F]or some reason the machine did not like the sample that was given. It registered out an error reading. That was noted. And the process was all started over again." Because the State did not prove that the testing device was working properly at the time the .12

result was obtained, foundation for the result was not established, and the trial court erred in receiving the result in evidence over Baue's objection.

In reaching this conclusion, we are mindful of our decision in *Keys v. Department of Motor Vehicles*, 249 Neb. 964, 546 N.W.2d 819 (1996), an administrative revocation proceeding based upon a claim that a motorist failed to submit to a chemical test of his breath as required by Neb. Rev. Stat. § 60-6,197(4) (Reissue 1993). The issue in that case was whether the motorist refused to submit to a breath test where he gave a breath sample which was sufficient to generate a digital reading on the Intoxilyzer Model 4011AS but insufficient to generate a test record card. We held that because there was no statutory or regulatory requirement that the results of a chemical breath test be shown on a test record card and there was no evidence of willful noncooperation, the motorist had "submitted" to the breath test as required by law. *Keys* is distinguishable from this case in that it did not involve foundational requirements for the admissibility of breath test results in a criminal action. Here, there is evidence that Lammers considered the failure of the testing device to generate a test record card after the first test to be an error, which necessitated the second test. We note that the insertion and the removal of the test record card into the testing device are specific steps in the procedure for conducting chemical tests of breath according to attachment 3 to 177 Neb. Admin. Code, ch. 1, § 007 (1990), which is the checklist Lammers followed in this case, and we cannot assume that the recording of test results on the test record card is simply a meaningless formality. It is clear that Lammers considered the failure to print a reading on the test record card as an indication that the testing device was not working properly when the initial specimen was tested.

The State argues that any error in the admission of this evidence was harmless. In a jury trial of a criminal case, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Myers, ante* p. 300, 603 N.W.2d 378 (1999); *State v. Jackson, ante* p. 24, 601 N.W.2d 741 (1999). In determining whether error in admitting evidence was harmless,

an appellate court bases its decision on the entire record in determining whether the evidence materially influenced the jury in a verdict adverse to the defendant. *Id.* Harmless error review looks to the basis on which the jury actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error. *State v. McHenry,* 250 Neb. 614, 550 N.W.2d 364 (1996).

Baue was convicted of violating Neb. Rev. Stat. § 60-6,196 (Reissue 1993), which proscribes several types of conduct, including the operation of a motor vehicle "[w]hile under the influence of alcoholic liquor" or while having "a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of [the operator's] breath." § 60-6,196(1)(a) and (c). A violation of § 60-6,196 is one offense which can be proved in more than one way. *State v. Blackman,* 254 Neb. 941, 580 N.W.2d 546 (1998). See, also, *State v. Hingst,* 251 Neb. 535, 557 N.W.2d 681 (1997); *State v. Dake,* 247 Neb. 579, 529 N.W.2d 46 (1995). After sufficient foundation is laid, a law enforcement officer may testify that in his or her opinion a defendant was driving under the influence. *State v. Howard,* 253 Neb. 523, 571 N.W.2d 308 (1997). Lammers expressed no such opinion at trial in this case. Although he observed Baue speeding, Lammers did not observe any erratic driving such as swerving or weaving. Lammers testified that he noticed the odor of alcoholic liquor emanating from Baue's vehicle, in which Baue, the driver, and two passengers were seated, and that he observed Baue to have "red, watery eyes." However, he acknowledged that such observations are not necessarily indicative of intoxication and admitted that he did not make a determination of whether or not Baue was intoxicated upon observing him at the time of the stop at approximately 1:30 a.m. Although Baue gave an affirmative response to Lammers' inquiry as to whether "he'd had anything to drink that night," the record does not indicate the amount, time, or duration of any alcohol consumed by Baue prior to his arrest.

It is therefore apparent that the strongest evidence upon which the jury could convict Baue of DUI was the .11 breath test

result, obtained approximately 15 minutes after the .12 result which was erroneously received in evidence. The jury also heard the testimony of Baue's expert that the breath test was subject to a .03 margin of error, so that Baue's actual breath alcohol content could have been as low as .08. Viewing the entire record, including this evidence, we cannot say that the error in permitting Lammers to testify as to the initial .12 breath test result was harmless beyond a reasonable doubt. The inadmissible result of the first test tends to corroborate and validate the admissible but disputed result of the second test, notwithstanding the "limiting instruction" given by the trial court which included two specific references to the .12 digital reading from the first breath test. See *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998). On these facts, we are simply unable to conclude that the verdict was "surely unattributable to the error." Thus, we are required to reverse Baue's conviction and remand the cause for a new trial. While this issue is dispositive of the appeal, we reach Baue's other assignments of error because they involve issues which are likely to recur during retrial.

3. ADJUSTMENT OF TEST RESULTS FOR MARGIN OF ERROR

Baue contends that he was entitled as a matter of law to the benefit of the margin of error which his expert attributed to the Intoxilyzer Model 4011AS test results. To the extent questions of law are involved, an appellate court is obligated to reach conclusions independent of the decisions reached by the courts below. *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999).

Baue relies upon *State v. Adams*, 251 Neb. 461, 467, 558 N.W.2d 298, 302 (1997), in which we applied a principle articulated in prior cases that "when there is a margin of error in a chemical test for alcohol, the test result must be adjusted and the defendant given the benefit of the adjusted reading." See, also, *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987); *State v. Bjornsen*, 201 Neb. 709, 271 N.W.2d 839 (1978). In *Adams*, the State's expert testified that due to the margin of error inherent in a blood alcohol test, the defendant's blood alcohol content ranged from .084 to .109. We reasoned that this result "fail[ed], as a matter of law, to establish beyond a reasonable doubt" that the defendant had a blood alcohol concentration of .10 or more.

*Id.* at 467, 558 N.W.2d at 302. Similarly, in *State v. Bjornsen*, 201 Neb. at 710, 271 N.W.2d at 840, we held that the State had not met its burden of proof where the State's witness testified that a blood test indicated alcohol content of .10 but admitted that the test was accurate " 'within five thousandths of a percent.' "

The rationale underlying our holdings in *State v. Adams, supra*, and *State v. Bjornsen, supra*, is that where the State is able to prove alcohol content only within a specified range, the lower point of which falls below the statutory value which affords a basis for a DUI conviction, it has failed to meet its burden of proof of guilt beyond a reasonable doubt. The same rationale would not apply where the State makes a prima facie showing with chemical test results of blood or breath alcohol levels which meet or exceed the statutory threshold for a DUI conviction and the defendant counters with evidence that the tests utilized carry a margin of error which, when applied to the test result, could produce a value which is less than the statutory limit. However, in *State v. Burling, supra*, this court held that where the State offered no evidence at trial to rebut a defense expert's testimony that the defendant's blood alcohol content could be as much as 52.38 percent less than that shown by the testing device utilized by the State, which would cause it to fall below the legal threshold, the chemical test did not establish DUI.

In *State v. Babcock*, 227 Neb. 649, 653, 419 N.W.2d 527, 530 (1988), we stated that in *Burling*, we "did not intend to . . . rule that as a matter of law a reading of the test results from an Intoxilyzer Model 4011AS should automatically be adjusted." We further stated that "[w]hether an adjustment is required is dependent upon the credible evidence in each case." *Id*. In *State v. Hvistendahl*, 225 Neb. 315, 318, 405 N.W.2d 273, 276 (1987), also a DUI case based upon test results generated by an Intoxilyzer Model 4011AS, we held that "when there is a conflict in the evidence as to what [the] margin of error [of the testing device] actually is, we will affirm the decision of the trier of fact so long as there is sufficient evidence in the record, if believed, to sustain its finding of guilt." We also noted that the trial court was not bound to accept the conclusion of a particu-

lar expert. We have subsequently reaffirmed that the weight and credibility of an expert's testimony is a question for the jury, *Lincoln Branch, Inc. v. City of Lincoln*, 245 Neb. 272, 512 N.W.2d 379 (1994) (superseded on other grounds by constitutional amendment), and that triers of fact are not required to take opinions of experts as binding upon them, *Jones v. Meyer*, 256 Neb. 947, 594 N.W.2d 610 (1999); *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 813, 572 N.W.2d 362 (1998). Thus, while Vasiliades' opinion with respect to the margin of error was not specifically rebutted during the pretrial hearing at which he testified, it was not binding upon the trial court, and Baue was not entitled to have the test result adjusted downward as a matter of law at that time. To the extent that *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987), is inconsistent with this holding, it is overruled.

At trial, there was conflicting evidence regarding the margin of error of the Intoxilyzer Model 4011AS. A witness called by the State disputed Vasiliades' opinion that the test result had an inherent error of .03 above or below the test result and stated that the .11 result was accurate to within 5 percent and thus exceeded the .10 threshold. Accordingly, the trial court did not err in refusing to adjust the test result as a matter of law and in submitting the issue to the jury for determination. See *State v. Hvistendahl, supra.*

### 4. HGN FIELD SOBRIETY TEST

Prior to trial, Baue filed a motion in limine to exclude evidence of the HGN test administered by Lammers prior to the arrest, citing as authority our decision in *State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986). In *Borchardt*, which involved an appeal from a DUI conviction, we concluded that the trial court erred in permitting the arresting officer to testify as to the administration and interpretation of an HGN test. We stated:

> The major difficulty with the testimony is that the record contains no competent evidence that this new test is valid, that is, that it in fact reveals the presence of intoxication. Evidence of a test result cannot be characterized as "scientific" or qualify as "technical or other specialized knowledge," and thus within the purview of [Neb. Rev.

Stat.] § 27-702 [Reissue 1985], unless and until it is estab-
lished that the . . . test result demonstrates what it is
claimed to demonstrate. It was such a failure of proof
which led this court to conclude in *Boeche v. State*, 151
Neb. 368, 37 N.W.2d 593 (1949), that polygraph, or so-
called "lie detector test," results had not gained such stand-
ing and scientific recognition as to justify being admitted
into evidence.

*State v. Borchardt*, 224 Neb. at 58-59, 395 N.W.2d at 559. When
the State subsequently designated experts who would testify in
opposition to Baue's motion in limine, he withdrew it. On the
State's motion and over Baue's objection, the trial court con-
ducted a pretrial evidentiary hearing concerning the scientific
principles underlying HGN testing and their acceptance in the
scientific community. Three witnesses called by the State testi-
fied at the hearing.

Dr. Marcelline Burns testified she has worked as a research
psychologist since 1969. Throughout her career, she has spe-
cialized in studying the effects of alcohol and other drugs on
human behavior, particularly driving skills. Burns has written
and lectured extensively on this subject and has previously tes-
tified as an expert on HGN testing in approximately 26 jurisdic-
tions. She also was personally involved in field sobriety studies
undertaken for the National Highway Traffic Safety
Administration (NHTSA), which resulted in reports issued in
1977 and 1981, as well as a field study for the Colorado
Department of Transportation in 1995.

Burns defined HGN as an involuntary "jerking movement of
the eyeballs." Based upon her studies, Burns testified that there
is a correlation between HGN and alcohol impairment, and that
HGN is therefore a behavioral symptom which can be utilized as
a part of a battery of field sobriety tests to determine if a
motorist is impaired by alcohol or certain other substances
which depress the central nervous system. The symptom can be
detected by law enforcement officers with proper training.
Burns and other trial witnesses explained that to administer the
HGN test, the officer holds a pen or similar object 12 to 15
inches from the subject and asks the subject to follow the object
with the eyes only as it is slowly moved from side to side in

front of him or her. Each eye is tested for nystagmus in three distinct circumstances. First, the officer observes whether the eye smoothly pursues the object as it is moved from side to side. Second, the officer checks for nystagmus at "maximum deviation," i.e., the point at which the eye has been deviated as far to the side as possible. Third, the officer checks for the angle of onset of the nystagmus. The test is scored by assessing one point for each part of the test that is failed, with a resulting maximum score of 6 points. According to the NHTSA guidelines, a score of 4 out of a possible 6 on the HGN test is a failure which indicates impairment. Burns testified that HGN is a better indicator of impairment than some other field sobriety tests because nystagmus is an involuntary movement which an individual is unable to mask or avoid.

Burns testified the NHTSA has developed HGN training materials for law enforcement officers based upon her studies and research and that training pursuant to these guidelines enables a law enforcement officer to properly administer and interpret the HGN test. According to Burns' studies, a decision to arrest for DUI based upon administration of the HGN and other standard field sobriety tests was validated by subsequent testing in approximately 90 percent of the cases studied. Based upon her studies, Burns has determined that the HGN test is a valid and reliable means of determining alcohol impairment. She testified that HGN testing has been accepted by the relevant scientific community which includes alcohol and drug researchers, professional law enforcement authorities, regulatory agencies dealing with traffic safety issues, and forensic scientists.

Jack Richman is an optometrist and professor of optometry who has studied and worked with law enforcement agencies regarding alcohol and its effect upon eye movement. He defined nystagmus as the loss of one's ability to hold the eyes steady either on a moving or stationary target, which results in a jerking motion of the eyes. Nystagmus can occur naturally when extreme demands are placed on the eyes or when an individual has a disease which affects the central nervous system. It can also occur when a person has ingested alcohol or other drugs which depress the central nervous system. Based upon his per-

sonal knowledge and observations, Richman testified that a properly trained law enforcement officer can detect the difference between naturally occurring nystagmus and that caused by alcohol or other central nervous system depressants. In 1993, the American Optometric Association, of which Richman is a member, adopted a resolution acknowledging "the scientific validity and reliability of the HGN test as a field sobriety test when administered by properly trained and certified police officers." According to Richman, the HGN test is intended to identify an impairment which may be caused by alcohol or other factors, and performance on the HGN test does not, in and of itself, prove that the subject is intoxicated.

The State's third witness was Lt. Darrell Fisher, the director of training for the Nebraska State Patrol. Fisher had personally undergone approximately 700 hours of specialized training in alcohol- and drug-impaired driving, which included training in standardized field sobriety testing. Fisher testified that the standardized battery of three field sobriety tests recommended by the NHTSA, which has been utilized in Nebraska since 1984, includes the HGN test. Fisher is certified by the NHTSA to conduct training in the standardized field sobriety tests. He trained Lammers to administer and interpret field sobriety tests in 1994. Nebraska state troopers receive 24 hours of training in field sobriety testing, with approximately 12 hours devoted to the HGN test. This training program has been audited and found to be acceptable by the NHTSA. Fisher trains Nebraska state troopers to administer and interpret the HGN test in accordance with the NHTSA instructions. Based upon Fisher's training and experience, it was his opinion that law enforcement officers can be trained to administer and interpret the HGN test with a high degree of accuracy and that the test itself "is a reliable indicator of impairment" caused by alcohol or other factors. Officers are trained that the HGN test is to be used as a tool to determine whether there is probable cause for a DUI arrest.

Based upon this testimony, the trial court determined that HGN testing is a valid means to determine alcohol impairment, which testing is generally accepted in the scientific community, and that "[n]o additional foundational evidence is required at trial." The court further determined that Baue could present the

transcript of the pretrial hearing at trial. On appeal, Baue contends that the trial court erred in conducting the pretrial hearing to determine whether HGN testing was sufficiently accepted in the scientific community so as to be a proper subject for expert testimony and, having resolved that issue in the affirmative, that it further erred by admitting testimony regarding HGN testing at trial in the absence of proper foundation. We address these contentions separately.

(a) Scientific Acceptance of HGN Field Sobriety Test

When a court is faced with an offer of a novel form of expertise which has not yet received judicial sanction, it must conduct an initial inquiry to determine whether the new technique or principle is sufficiently reliable to aid the jury in reaching accurate results. *State v. Dean*, 246 Neb. 869, 523 N.W.2d 681 (1994), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). In accordance with *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), this court has held that the admissibility of expert testimony based on a technique or process which utilizes or applies a scientific principle depends on general acceptance of the principle, technique, or process in the relevant scientific community. *State v. Carter*, 255 Neb. 591, 586 N.W.2d 818 (1998); *State v. Dean, supra; State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990), *disapproved on other grounds, State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991). Whether this standard has been met may be determined by the trial court on the basis of an evidentiary hearing outside the presence of the jury. *State v. Houser*, 241 Neb. 525, 490 N.W.2d 168 (1992).

Baue argues that the separate hearing in this case was improper because "HGN is not a *Frye* issue." Brief for appellant at 14. It is true that some jurisdictions do not consider the HGN test to be "scientific" and thus require no *Frye* hearing or foundation at trial other than the officer's testimony regarding his observations of the test. See, *Whitson v. State*, 314 Ark. 458, 863 S.W.2d 794 (1993); *State v. Sullivan*, 310 S.C. 311, 426 S.E.2d 766 (1993); *State v. Murphy*, 451 N.W.2d 154 (Iowa 1990). These cases generally reason that the HGN test is similar to other field sobriety tests in that it is based upon the officer's

observations and thus does not constitute scientific evidence. See *City of Fargo v. McLaughlin*, 512 N.W.2d 700 (N.D. 1994).

However, *State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986), indicates otherwise. We have cited *Borchardt* for the proposition that admissibility of an opinion based upon a scientific principle, technique, or process depends upon its general acceptance in the relevant scientific community. See, also, *State v. Reynolds, supra.* Since *Borchardt*, courts in numerous other jurisdictions have evaluated and determined the admissibility of the HGN test in accordance with the *Frye* standard. See, e.g., *Ballard v. State*, 955 P.2d 931 (Alaska App. 1998); *Williams v. State*, 710 So. 2d 24 (Fla. App. 1998); *State v. Taylor*, 694 A.2d 907 (Me. 1997); *People v. Berger*, 217 Mich. App. 213, 551 N.W.2d 421 (1996); *Hawkins v. State*, 223 Ga. App. 34, 476 S.E.2d 803 (1996); *Schultz v. State*, 106 Md. App. 145, 664 A.2d 60 (1995); *State v. Klawitter*, 518 N.W.2d 577 (Minn. 1994); *City of Fargo v. McLaughlin, supra*; *People v. Wiebler*, 266 Ill. App. 3d 336, 640 N.E.2d 24, 203 Ill. Dec. 597 (1994); *Emerson v. State*, 880 S.W.2d 759 (Tex. Crim. App. 1994); *State v. Sullivan, supra*; *State v. Hill*, 865 S.W.2d 702 (Mo. App. 1993), *overruled on other grounds, State v. Carson*, 941 S.W.2d 518 (Mo. 1997); *Whitson v. State, supra*; *People v. Buening*, 229 Ill. App. 3d 538, 592 N.E.2d 1222, 170 Ill. Dec. 542 (1992); *State v. Garrett*, 119 Idaho 878, 811 P.2d 488 (1991); *State v. Armstrong*, 561 So. 2d 883 (La. App. 1990); *State v. Superior Court*, 149 Ariz. 269, 718 P.2d 171 (1986). However, this court has not specifically addressed the admissibility of HGN test results since *Borchardt*.

We note that after withdrawing his motion in limine, Baue objected to the evidentiary hearing and offered to stipulate that "the [HGN] test is admissible at trial if proper scientific foundation is laid." The county court overruled this objection and proceeded with the hearing. Given the implicit holding in *Borchardt* that the HGN test was required to meet the *Frye* standard before it could be admissible at trial and in the absence of any subsequent appellate opinion conferring judicial acceptance upon the HGN test under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), we cannot conclude that the county court erred in conducting a *Frye* hearing, notwithstanding Baue's offer to

stipulate to admissibility subject to "proper scientific foundation."

 Based upon our review of the evidence adduced at the pretrial hearing, we conclude that the basic scientific principle upon which the HGN field sobriety test is based, i.e., that alcohol consumption causes nystagmus, is generally accepted in the relevant scientific community. However, in light of evidence in the record that nystagmus can be caused by factors other than alcohol and that intoxication cannot be established by the HGN test alone, we agree with other courts which have placed limitations upon the purposes for which HGN test results are admissible. See *Ballard v. State, supra,* and cases cited therein. Accordingly, we hold that the HGN field sobriety test meets the *Frye* standard for acceptance in the relevant scientific communities, and when the test is given in conjunction with other field sobriety tests, the results are admissible for the limited purpose of establishing that a person has an impairment which may be caused by alcohol. *State v. Borchardt,* 224 Neb. 47, 395 N.W.2d 551 (1986), is overruled to the extent that it is inconsistent with this holding.

 We agree with the conclusion of the court in *Ballard v. State,* 955 P.2d 931, 940 (Alaska App. 1998):

> While HGN testing may not, of itself, be sufficient to establish intoxication, HGN test results are admissible as a factor to be considered by the fact-finder when determining intoxication. Testimony concerning a defendant's performance on a properly administered HGN test is admissible on the issue of impairment, provided that the prosecution claims no greater reliability or weight for the HGN evidence than it does for evidence of the defendant's performance on any of the other standard field sobriety tests, and provided further that the prosecution makes no attempt to correlate the HGN test result with any particular blood-alcohol level, range of blood-alcohol levels, or level of impairment.

Thus, we hold that while an HGN test result is relevant to show that an individual is impaired, such a result, standing alone, is insufficient to prove the offense of DUI as defined by § 60-6,196 beyond a reasonable doubt.

(b) Foundation for HGN Field Sobriety Test Results

Baue contends that the HGN testing was not admissible at trial because adequate foundation was not established. He argues that such foundation should have included the scientific principles and theory underlying HGN testing which were the subject of the pretrial *Frye* hearing but were not established in the presence of the jury. The State argues that the only foundation necessary at trial was Lammers' testimony that he was trained to administer HGN tests and had administered the test to Baue in accordance with that training.

One of the first cases to determine that the HGN test satisfied the *Frye* standard was *State v. Superior Court*, 149 Ariz. 269, 718 P.2d 171 (1986). After making this determination, the court concluded that "with proper foundation as to the techniques used and the officer's ability to use it . . . testimony of defendant's nystagmus is admissible on the issue of a defendant's blood alcohol level as would be other field sobriety test results on the question of the accuracy of the chemical analysis." *Id.* at 279, 718 P.2d at 181. A majority of jurisdictions have arrived at similar conclusions. See, e.g., *State v. Zivcic*, 229 Wis. 2d 119, 128, 598 N.W.2d 565, 570 (1999) ("[a]s long as the HGN test results are accompanied by the testimony of a law enforcement officer who is properly trained to administer and evaluate the test," evidence is admissible); *Ballard v. State, supra* (holding police officer may testify to results of HGN testing if government establishes officer adequately trained in administration and assessment of test); *Williams v. State*, 710 So. 2d 24, 32 (Fla. App. 1998) (noting "HGN test results are generally accepted as reliable and thus are admissible into evidence once a proper foundation has been laid that the test was correctly administered by a qualified [person]"); *State v. Taylor*, 694 A.2d 907 (Me. 1997) (holding proper foundation for admission of HGN test is evidence that officer or administrator of test is trained in procedure and test properly administered); *People v. Berger*, 217 Mich. App. 213, 551 N.W.2d 421 (1996) (holding because HGN test satisfied *Frye* standard, only foundation necessary for introduction of evidence regarding HGN test is evidence that test properly performed and officer administering test qualified to perform it); *Schultz v. State*, 106 Md. App. 145, 664 A.2d 60

(1995) (holding HGN results admissible in future cases without reference to *Frye* standard if officer properly qualified and test conducted properly); *People v. Leahy*, 8 Cal. 4th 587, 882 P.2d 321, 34 Cal. Rptr. 2d 663 (1994) (holding once *Frye* standard met in published opinion regarding HGN, prosecution not required to submit expert testimony to jury, and police officers are sufficient to testify to results of HGN tests); *State v. Hill*, 865 S.W.2d 702 (Mo. App. 1993), *overruled on other grounds, State v. Carson*, 941 S.W.2d 518 (Mo. 1997) (holding when properly administered by adequately trained personnel, HGN test admissible as evidence of intoxication); *State v. Armstrong*, 561 So. 2d 883 (La. App. 1990) (proper foundation for admitting HGN test is showing officer trained in procedure, certified in its administration, and procedure properly administered).

A minority of jurisdictions require the state to provide additional foundation at trial pertaining to the correlation between HGN test results and alcohol impairment before the HGN evidence is admitted. See, *State v. Helms*, 348 N.C. 578, 504 S.E.2d 293 (1998) (holding officer may not testify to HGN test result without sufficient scientifically reliable evidence as to correlation between intoxication and nystagmus); *State v. Murphy*, 953 S.W.2d 200 (Tenn. 1997) (holding explanation of underlying scientific basis of HGN test by expert is foundational requirement); *State v. Ruthardt*, 680 A.2d 349, 361 (Del. Super. 1996) (holding in addition to testimony of arresting officer, foundational requirements include testimony of expert having "more indepth experience in the underlying scientific principles of HGN and the use of the test in DUI prosecutions").

We conclude that the majority view is sound, and adopt the view that a police officer may testify to the results of HGN testing if it is shown that the officer has been adequately trained in the administration and assessment of the HGN test and has conducted the testing and assessment in accordance with that training. In this case, Lammers testified that he was trained on HGN testing at the Nebraska State Patrol Academy as part of a 40-hour training course on DUI. He further testified at trial that he performed the HGN test on Baue the night of the arrest and demonstrated how he did so. He testified that Baue scored 6 points, thus failing the test. Lammers specifically explained that

the HGN test is a measurement of the eyes that detects involuntary movement or jerking. He testified that nystagmus is an involuntary twitching of the eyes caused by alcohol or drugs, so that when a subject is under the influence, the eye will involuntarily move. Based upon this foundational evidence, the results of the HGN test administered to Baue were admissible for the purposes we have outlined above.

## 5. Failure to Appoint Expert

Baue contends that the county court abused its discretion when it refused to appoint an expert witness to testify for him at the *Frye* hearing regarding the reliability and scientific acceptance of the HGN test. Baue argues he was denied the right to a fair trial because he could not afford an HGN expert. As authority for this assignment of error, he relies on *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985), in which the Supreme Court addressed the issue of whether the Constitution requires that an indigent defendant have access to a psychiatric expert when his sanity at the time of the offense is in question. In its analysis, the Court noted "when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense." 470 U.S. at 76. It further noted that fundamental fairness required the state to ensure that an indigent defendant has the "raw materials integral to the building of an effective defense." 470 U.S. at 77.

We have repeatedly held that the right of an indigent defendant to the appointment of an expert witness at the State's expense generally rests in the discretion of the trial court. *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998); *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). In support of his application for appointment of an expert, Baue presented evidence that while he had full-time employment, he owed his attorney approximately $3,000 and had exhausted his available funds in retaining Vasiliades to testify with respect to the Intoxilyzer results. The record does not disclose that Baue was indigent. When asked his reason for seeking a court-appointed expert, Baue stated: "I just don't make enough money

to pay for one. I got other bills to pay for and attorney fees now and I just can't afford it." In denying Baue's motion, the trial court concluded that no constitutional issue was presented and that Baue had not shown that he had exhausted his own financial means to retain an expert. We cannot conclude that the county court abused its discretion in declining to appoint an expert for Baue under those circumstances.

### 6. RULINGS ON MOTION FOR DIRECTED VERDICT AND MOTION TO DISMISS

Although Baue assigns as error the overruling of both his motion for directed verdict and his motion to dismiss made at the conclusion of the State's case in chief, his brief discusses only the latter. Errors that are assigned but not argued will not be addressed by an appellate court. *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999). Thus, we need only address his assignment relating to the motion to dismiss for insufficiency of the evidence.

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Sims, ante* p. 357, 603 N.W.2d 431 (1999).

Baue's contention that the State failed to present evidence sufficient to constitute a prima facie case is without merit. The result of the second breath test established that Baue had a concentration of .10 of 1 gram or more by weight of alcohol per 210 liters of his breath. As we have noted, the trial court was not required as a matter of law to adjust this test result downward on the basis of any alleged margin of error of the testing device. This evidence, if believed by the jury, was alone sufficient to

convict Baue of DUI. See § 60-6,196(1)(b). The trial court therefore did not err in overruling his motion to dismiss.

## IV. CONCLUSION

In summary, we conclude that the trial court, and the district court in its appellate review, did not err in determining (1) that there was probable cause for Baue's arrest, (2) that evidence relating to the HGN test administered prior to arrest was properly admitted at trial, and (3) that the result of the second breath test administered following Baue's arrest was not subject to downward adjustment as a matter of law. We also conclude, as did the district court, that the trial court did not err in denying Baue's motion for appointment of an expert and his motion to dismiss at the close of the State's case in chief. However, we hold that the trial court committed prejudicial error in receiving testimony over objection regarding the digital readout generated by the first breath test administered to Baue after his arrest. Because we conclude the evidence was sufficient to sustain Baue's conviction, but that part of the evidence should not have been admitted, we reverse the judgment of conviction and remand the cause to the district court with instructions to reverse the judgment of the county court and remand the matter for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.