SEVERSON, Justice
(concurring specially).
[¶ 26.] I concur but write specially. We have acknowledged that the HGN test is “nationally recognized as a reliable field sobriety test” and if the test is “properly administered by a trained officer,” the evidence may be admitted at trial, along with evidence of other field sobriety tests. Hullinger, 2002 S.D. 83, ¶ 19, 649 N.W.2d at 261. Based on the evidence, it was error to allow Officer Treadway’s testimony as to Yuel’s specific BAC on the basis of the HGN test. However, I concur, as the error was harmless because, in this case, there was enough evidence, specifically a blood test, to establish a BAC level.
[¶ 27.] In Hullinger, we cited cases from a number of jurisdictions and stated that “[m]ost courts permit the admission of HGN test evidence by arresting officers who have been adequately trained in conducting the test and can show that the test in the particular case at bar was con *689 ducted in substantial accordance with that training.” Id. ¶ 12. Prior to allowing testimony about the HGN test and other field sobriety tests, we require that the witness offering testimony is properly trained and qualified in administering the test. Id. ¶ 19. Here, the trial court conducted a hearing outside the presence of the jury to determine whether Officer Treadway’s testimony regarding the HGN test was admissible. Officer Treadway offered evidence of his extensive training and experience administering the HGN test and other field sobriety tests.
[¶ 28.] However, whether a witness may testify that the HGN test indicates a specific BAC level is another matter. In Hullinger, we relied on a Nebraska case, State v. Baue, 258 Neb. 968, 607 N.W.2d 191 (2000), where the Nebraska Supreme Court determined that a majority of courts that have reviewed the HGN test allow the arresting officer to testify to the administration of the test. Hullinger, 2002 S.D. 83, ¶ 12, 649 N.W.2d at 258. In Baue, the Nebraska Supreme Court went on to hold that:
[T]he HGN field sobriety test meets the Frye standard for acceptance in the relevant scientific communities, and when the test is given in conjunction with other field sobriety tests, the results are admissible for the limited purpose of establishing that a person has an impairment which may be caused by alcohol.
607 N.W.2d at 204 (emphasis added). When reviewing the same issue, the Indiana Court of Appeals held that “the results of a properly administered HGN test are admissible to show impairment which may be caused by alcohol and, when accompanied by other evidence, will be sufficient to establish probable cause to believe a person may be intoxicated.” Cooper, 761 N.E.2d at 903. The Arizona Supreme Court, one of the courts to consider use of the HGN test earliest, stated that the test:
[M]ay be admitted in evidence to corroborate or attack, but not to quantify, the chemical analysis of the accused’s blood alcohol content. It may not be used to establish the accused’s level of blood alcohol in the absence of a chemical analysis showing the proscribed level in the accused’s blood, breath or urine.
State v. Super. Ct., 149 Ariz. 269, 718 P.2d 171, 182 (1986).
[¶ 29.] Another court, surveying the breadth of HGN test cases, found that “most of the states that have ruled that HGN evidence is admissible have not allowed it to be used to prove specific BAC but instead only as circumstantial proof of intoxication or impairment.” United States v. Horn, 185 F.Supp.2d 530, 551 (D.Md.2002). The Kansas Supreme Court also reviewed a number of cases and determined that:
[C]ourts generally agree that there is a dividing line between admitting field sobriety test results as circumstantial evidence of intoxication, which is admissible, and the use of such results to assert or imply a specific level of intoxication, which is not admissible unless an appropriate scientific opinion foundation has been laid.
State v. Shadden, 290 Kan. 803, 235 P.3d 436, 450-51 (2010).
[¶ 30.] In order to present testimony that the HGN test may be used to determine a specific BAC level, I echo Justice Amundson’s concurrence that we should require trial courts consider expert testimony via a Daubert hearing. Hullinger, 2002 S.D. 83, ¶¶ 24-25, 649 N.W.2d at 261-62 (Amundson, J., concurring specially). *690 See SDCL 19-15-2 (Rule 702);[10] Daubert, 509 U.S. at 592-95, 113 S.Ct. at 2796-98; State v. Hofer, 512 N.W.2d 482, 484 (S.D.1994) (adopting the Daubert test in South Dakota). “The Daubert standard requires the trial court to ensure that an expert’s testimony both ‘rests on a rehable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands.’ ” State v. Loftus, 1997 S.D. 131, ¶ 21, 573 N.W.2d 167, 173 (quoting Kuper v. Lincoln-Union Elec. Co., 1996 S.D. 145, ¶ 40, 557 N.W.2d 748, 760 (citations omitted)). See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-53, 119 S.Ct. 1167, 1174-76, 143 L.Ed.2d 238 (1999) (applying the Daubert factors to the testimony of engineers and other experts who are not scientists). As Justice Amundson noted:
One court stated that the HGN test “rests on scientific premises well beyond the officer’s knowledge, training, or education. Without some understanding of the processes by which alcohol ingestion produces nystagmus, how strong the correlation is, how other possible causes might be masked, what margin of error has been shown in statistical survey, and a host of other relevant factors, the officer’s opinion on causation, notwithstanding his ability to recognize the symptom, was unfounded.”
Hullinger, 2002 S.D. 83, ¶ 26, 649 N.W.2d at 262 (quoting State v. Witte, 251 Kan. 313, 836 P.2d 1110, 1115-16 (1992)).
[¶ 31.] Here, Officer Treadway testified that finding four or more indicators in the HGN test is eighty to ninety percent accurate in determining that the suspect has a BAC of 0.08 or above. Officer Treadway cites field and laboratory studies as the basis for his statement that certain clues in the HGN test indicate a specific BAC level. But, Officer Treadway did not conduct the studies that explain the scientific basis for his statement or otherwise offer scientific foundation to support his opinion. He reported learning about the HGN field and laboratory studies during his training, but the record does not reflect that he possessed the scientific background to offer testimony about the science behind the studies, the methodology used, the reliability of the studies, or the acceptance of these studies in the pertinent scientific community, as is required under SDCL 19-15-2 (Rule 702), Daubert, and Kumho Tire.
[¶ 32.] In fact, the field and laboratory studies that Officer Treadway referred to have been questioned when subjected to scrutiny in a Daubert hearing. The Horn case includes an extensive discussion on the use of the HGN test to prove a specific BAC level and various critiques of the methodology used by the National Highway Traffic Safety Administration and others in studying the HGN test. 185 F.Supp.2d 530.
[¶ 33.] Officer Treadway was qualified to offer testimony about administering the HGN test and whether the test indicated impairment in this case. Because Officer Treadway was not shown to have the ap *691 propriate scientific background under our standards in SDCL 19-15-2 (Rule 702), Daubert, and Kumho Tire, he was not a qualified expert to testify to any connection between the HGN test and a specific BAC level. For these reasons, it was error to allow Officer Treadway’s testimony as to Yuel’s specific BAC on the basis of the HGN test.

. SDCL 19-15-2 (Rule 702) provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if:
(1) The testimony is based upon sufficient facts or data,
(2) The testimony is the product of reliable principles and methods, and
(3) The witness has applied the principles and methods reliably to the facts of the case.