STATE OF NEBRASKA, APPELLANT, V.
RAFAEL G. MUNOZ, APPELLEE.
647 N.W.2d 668

Filed July 2, 2002.   No. A-01-779.

John W. Reisz, Deputy Sarpy County Attorney, for appellant.

Thomas J. Garvey, Sarpy County Public Defender, for appellee.

IRWIN, Chief Judge, and INBODY and CARLSON, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Rafael G. Munoz was charged with driving under the influence of alcohol. The county court found Munoz not guilty, based in part on a finding that title 177 of the Nebraska Administrative Code, which had been received into evidence on behalf of the State, was substantive evidence of a "margin of error" for the Intoxilyzer, which the trial court then found had to be applied in Munoz' favor. This resulted in Munoz' breath test's being below the legal limit. The district court affirmed the county court's judgment. The State subsequently filed with this court an application for leave to docket error proceedings, pursuant to Neb. Rev. Stat. § 29-2315.01 (Reissue 1995). We granted the application, and this appeal ensued. We find that the county court erred in finding that title 177 of the Nebraska Administrative Code

should be considered substantive evidence of a margin of error for the Intoxilyzer, and the State's exception is sustained.

## II. BACKGROUND

On April 29, 2000, at approximately 1 a.m., Munoz was stopped by Officer Greg Kunz of the LaVista Police Department. Munoz was initially stopped for not having license plates on his vehicle. Officer Kunz determined from Munoz' driver's license that Munoz had failed to update his license to reflect his address in LaVista, and Officer Kunz proceeded to issue a "fix-it" ticket instructing Munoz to update his license. When Officer Kunz returned to Munoz' vehicle with the ticket, Officer Kunz "detected an odor of intoxicants coming from the vehicle."

Officer Kunz instructed Munoz to perform field sobriety tests. Officer Kunz also administered a preliminary breath test. Based on Officer Kunz' experience, training, and personal observations of Munoz, Officer Kunz formed the opinion that Munoz was impaired and was operating a motor vehicle while under the influence of alcohol. As a result, Officer Kunz placed Munoz under arrest.

After the arrest, Munoz was transported to the Sarpy County jail for booking and further testing. At that location, an Intoxilyzer test was administered. There was evidence presented at trial concerning whether the provisions of title 177 of the Nebraska Administrative Code were complied with regarding the necessary requirements for administration of an Intoxilyzer test. There is no issue raised on appeal concerning this compliance. The Intoxilyzer test administered to Munoz revealed a digital reading of "0.103 of a gram of alcohol per 210 liters of breath."

At the conclusion of the trial to the county court, the court indicated that "it appears as though . . . built within the calibration of this machine of the Intoxilyzer 5000 is a ten percent standard of deviation which means that as long as the machine is working within a 10 percent range, any test result which is given is deemed to be acceptable." Based on the county court's reading of the calibration provisions of title 177, it concluded that Munoz was entitled to have the alleged 10-percent standard of deviation applied in his favor, which would cause his breath test results to fall below the then legal limit for intoxication. The county court thus found Munoz not guilty.

On appeal, the district court affirmed. In its order, the district court stated the Nebraska Supreme Court has held that "where there is a margin of error in a chemical test for alcohol, the results of the test must be adjusted and the benefit given to the Defendant," citing *State v. Adams*, 251 Neb. 461, 558 N.W.2d 298 (1997), and *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987). The district court further stated that *State v. Baue*, 258 Neb. 968, 607 N.W.2d 191 (2000), limited that holding to the extent that a margin of error is not automatically applied. Nonetheless, the district court found no error in the county court's adjustment of Munoz' test result by 10 percent and affirmed the finding that Munoz was not guilty. This error proceeding followed.

### III. ASSIGNMENT OF ERROR

The State's assignment of error is as follows: "The District Court erred in its finding that [t]itle 177 of the Nebraska Administrative Code is evidence of a permissible [margin of] error of 10% of the Intoxilyzer result which must be granted to the Defendant."

### IV. ANALYSIS

#### 1. SCOPE AND PURPOSE OF REVIEW

The instant appeal is before the court as an error proceeding filed by the county attorney pursuant to § 29-2315.01, which states:

> The county attorney may take exception to any ruling or decision of the court made during the prosecution of a cause by presenting to the trial court the application for leave to docket an appeal with reference to the rulings or decisions of which complaint is made. . . . The county attorney shall then present such application to the appellate court within thirty days from the date of the final order.

■ The scope and purpose of appellate review in error proceedings are defined in Neb. Rev. Stat. § 29-2316 (Reissue 1995). The purpose of the review is to provide an authoritative exposition of the law to serve as precedent in future cases. *State v. Falcon*, 260 Neb. 119, 615 N.W.2d 436 (2000); *State v. Portsche*, 258 Neb. 926, 606 N.W.2d 794 (2000).

## 2. MARGIN OF ERROR PRECEDENTS

At issue in this appeal is whether title 177 of the Nebraska Administrative Code, when received into evidence by the trial court, should serve as substantive evidence of the margin of error for the Intoxilyzer. The issue of applying a margin of error or margin of tolerance to blood or breath test results has been the subject of a line of appellate cases in this state dating back to 1978. Although none of those cases specifically address the issue presented in the instant case, the development of this area of the law is relevant to answering the issue presented.

In *State v. Bjornsen*, 201 Neb. 709, 271 N.W.2d 839 (1978), the State's chemist testified during cross-examination that the testing used in that case was accurate to within five-thousandths of 1 percent. Applying the margin of error to the defendant's test results caused those results to fall below the .10 level that was required for a finding of intoxication. The Nebraska Supreme Court held that where a driving under the influence conviction is based solely on test results, the test must show "outside of any error or tolerance inherent in the testing process" that the prohibited percent of alcohol was present in the defendant. *Id.* at 711, 271 N.W.2d at 840. Accordingly, the court reversed the conviction.

In *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987), *overruled in part, State v. Baue, supra,* the Supreme Court was presented with a defendant with a breath test result of .164. The defendant offered evidence regarding the margin of error for Intoxilyzer results, and the State offered nothing to rebut the defendant's evidence. The Supreme Court held that based on the testimony of the defendant's expert, the .164 test result had to be lowered to the bottom level of the margin of error, which was .086. The court affirmed the conviction, however, based on other evidence that the defendant was intoxicated.

In *State v. Hvistendahl*, 225 Neb. 315, 405 N.W.2d 273 (1987), the Supreme Court was presented with an Intoxilyzer result of .133. Both the State and the defendant presented expert testimony concerning the margin of error. The Supreme Court held that when there is conflicting testimony concerning the margin of error, the question is for the trier of fact to resolve. The court further noted that the trial court was not bound to accept the defendant's expert testimony anyway, as trial courts

are not bound to accept an expert's testimony. To this extent, the holding appears to contradict and implicitly overrule the Supreme Court's findings in *State v. Burling, supra*, where the defendant had presented unrefuted expert testimony and the court indicated that the test results had to be altered by the margin of error testified to by that expert.

In *State v. Babcock*, 227 Neb. 649, 419 N.W.2d 527 (1988), the defendant argued that the Supreme Court's holding in *State v. Burling, supra*, required the trial court to always reduce test results by the margin of error specified in that opinion. The *Babcock* court clarified that each case depends on its own credible evidence. Because the defendant had not presented any evidence concerning the margin of error, the court found sufficient evidence to affirm his conviction.

The issue does not appear to have been before the Supreme Court again until 1997, when the court decided *State v. Adams*, 251 Neb. 461, 558 N.W.2d 298 (1997). In *State v. Adams*, the State's expert testified that the defendant's breath test, when allowing for the margin of error for the testing machine, was between .084 and .109. The testimony indicated that the actual readout was .097. The Supreme Court held that prior opinions had held that "when there is a margin of error in a chemical test for alcohol, the test result must be adjusted and the defendant given the benefit of the adjusted reading." *Id.* at 467, 558 N.W.2d at 302. The court held that the State had failed to prove, as a matter of law, that the defendant was intoxicated.

■ In *State v. Baue*, 258 Neb. 968, 607 N.W.2d 191 (2000), the Supreme Court attempted to clarify this issue and the court's prior, seemingly inconsistent, holdings. The defendant's Intoxilyzer readout was .11. At a pretrial hearing, the defendant presented the testimony of an expert who testified that the margin of error for the Intoxilyzer was plus or minus .03 and the State did not present any contrary evidence. The State did present refuting evidence at trial. The court recognized the above-quoted statement in *State v. Adams, supra*, that the test *must* be adjusted where there is a margin of error. The court held that the rationale underlying the earlier opinions was that "where the State is able to prove alcohol content only within a specified range, the lower point of which falls below the statutory value," the State has

failed to meet its burden of proof. *State v. Baue*, 258 Neb. at 978, 607 N.W.2d at 200. The court held that the same is not true if the State makes a prima facie showing regarding the test and the defendant rebuts with unrefuted expert testimony. The *Baue* court overruled *State v. Burling, supra,* to the extent it was contrary to this holding.

### 3. Application

In the present case, the county court found that language in title 177 of the Nebraska Administrative Code, indicating a test result is considered acceptable so long as the testing device calibration is verified to be accurate within plus or minus .010 of the target value of the simulator solution, should be considered evidence that the Intoxilyzer has a margin of error of 10 percent. See 177 Neb. Admin. Code, ch.1, § 007.05D8 (1998). We disagree.

Title 177 of the Nebraska Administrative Code contains the rules and regulations relating to the analyses for the determination of the alcohol content in blood, breath, or urine, as adopted by the Nebraska Department of Health and Human Services Regulation and Licensure (Department). A thorough review of title 177 indicates that nowhere do the regulations purport to convey any particular margin of error for testing devices, except to the extent the Department has made determinations concerning how accurate particular devices must be calibrated for test results to be considered acceptable. There is no evidence, expert or otherwise, in the record before us to indicate that the calibration requirements set forth by the Department are in any way related to the actual margin of error for the testing devices. While these requirements may be related to the actual margin of error, the record before us contains no evidence to support this critical and far-reaching conclusion.

There is nothing in title 177 to indicate what, if any, correlation there is between these standards for calibration and operation adopted by the Department and the actual margin of error for the testing devices. For example, if the Department would choose to amend the regulations and to require the testing device calibration to be verified to be accurate within plus or minus .005, such a change would not necessarily bear any correlation to the actual margin of error for the testing device, which could

be greater or less than the calibration requirements espoused in the regulations. Indeed, the evidence in the present case indicates that the machine's calibration tests indicated a degree of deviation that was substantially lower than the .010 permitted by title 177.

A review of the record presented in the instant case indicates no evidence whatsoever was presented, either by the State or by the defendant, concerning the margin of error for the Intoxilyzer. As noted, title 177 does not contain any such evidence. The State's exception is therefore sustained.

Finally, we note that the district court's order affirming the county court's finding that the State had failed to prove Munoz' guilt also indicates that "[w]hen competent evidence of a margin of error is presented in the State's case or when the [d]efendant presents a margin of error in it's [sic] case, which is unrebutted, it appears to this court the margin of error is then automatically applied to the test of the [d]efendant." As we indicated in our discussion above, the Supreme Court has specifically held to the contrary concerning unrefuted expert evidence presented by a defendant regarding the margin of error for an Intoxilyzer. Rather, the rule is that when the State presents evidence indicating that the test results are accurate only within a specified range, the lower portion of which would place the defendant's test results outside the range prohibited by law, the State has failed to meet its burden of proof. When the State has proven a prima facie case and the defendant then attacks the State's case by presenting unrefuted expert testimony, the trial court is free, as in other cases, to either credit or not credit the expert's opinion.

### 4. EFFECT OF RULING

As noted, this is an appeal by a county attorney pursuant to § 29-2315.01. Section 29-2316 describes the effect of this court's ruling pursuant to § 29-2315.01:

> The judgment of the court in any action taken pursuant to section 29-2315.01 shall not be reversed nor in any manner affected when the defendant in the trial court has been placed legally in jeopardy, but in such cases the decision of the appellate court shall determine the law to govern in any

similar case which may be pending at the time the decision is rendered or which may thereafter arise in the state.

The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution and of article I, § 12, of the Nebraska Constitution protects " ' "an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." ' " *State v. Falcon*, 260 Neb. 119, 124-25, 615 N.W.2d 436, 440 (2000) (quoting *State v. Bostwick*, 222 Neb. 631, 385 N.W.2d 906 (1986), and *Green v. United States*, 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957)). Under Neb. Const. art. I, & 12, jeopardy attaches when a judge, hearing a case without a jury, begins to hear evidence as to the guilt or innocence of the defendant. *State v. Falcon, supra.*

In the instant case, jeopardy has attached because the county court heard evidence as to the guilt or innocence of Munoz. Therefore, under § 29-2316, because jeopardy has attached, our decision will not affect the judgment of the county court or district court herein. It will determine the law to govern in any similar case which may be pending at the time this decision is rendered or which may thereafter arise in the state. See § 29-2316.

## V. CONCLUSION

We find the lower court erred in finding that title 177 of the Nebraska Administrative Code should be considered substantive evidence of the margin of error for an Intoxilyzer such that a defendant's test results should be automatically adjusted according to the calibration standards set forth in title 177. Accordingly, although Munoz stands acquitted, the State's exception is sustained.

EXCEPTION SUSTAINED.