741 N.W.2d 701 (2007)
16 Neb. App. 127
STATE of Nebraska, appellee,
v.
Stephen C. KUHL, appellant.
No. A-06-1393.
Court of Appeals of Nebraska.
November 6, 2007.
*705 Steven Lefler, of Lefler Law Office, Omaha, for appellant.
Paul D. Kratz, Omaha City Attorney, Martin J. Conboy III, Omaha City Prosecutor, and J. Michael Tesar for appellee.
INBODY, Chief Judge, and CARLSON and MOORE, Judges.
MOORE, Judge.

INTRODUCTION
Stephen C. Kuhl was convicted in the county court for Douglas County of speeding and driving under the influence (DUI). Kuhl appealed his convictions to the district court, which affirmed the "judgment of conviction and sentence" entered by the county court. Because we find that the county court's decisions conform to the law, are supported by competent evidence, and are neither arbitrary, capricious, nor unreasonable, we affirm the district court's affirmance of Kuhl's "judgment of conviction and sentence."

BACKGROUND
On July 29, 2005, Kuhl was charged with speeding, in violation of Neb.Rev.Stat. § 60-6,186 (Reissue 2004), and with DUI, in violation of an Omaha city ordinance.
On September 13, 2005, Kuhl filed a motion seeking an order compelling the State to provide Kuhl with (1) any modifications or repairs conducted on the "breath machine" used in this case, (2) the "`Owner's Manual' for the subject machine," and (3) the "electrical and computer component configuration, including, but not limited to, software, power supplies, processor boards, pressure switches, Z80 chips, display boards and mortar boards of the breath testing device upon which [Kuhl] was tested."
The county court heard Kuhl's motion on September 29, 2005, and we have set forth the details of the hearing as relevant to this appeal in the analysis section below. The court entered an order on October 4, ruling on Kuhl's motion. With respect to the first two paragraphs of the motion, which had requested documentation and information on the "breath machine," the court granted Kuhl's motion. The court ordered the State to produce, on or before October 26, documentation regarding modifications and repairs on the machine used to obtain a breath sample from Kuhl in this case at the time of his arrest as well as the owner's manual and any other operator's or usage manuals relating to the machine.
With respect to Kuhl's request that the State provide "electrical and computer component configuration," the county court noted that the State was unable, at the hearing, to provide the court with any information as to whether it or the Omaha Police Department was in possession of any such information or documentation. Accordingly, the court ordered the State to file with the court, on or before October 26, 2005, a written report advising the court and Kuhl as to whether any such documentation existed. The State subsequently filed a report that it had the owner's manual and documentation concerning modifications or repairs to the breath machine, which it would produce to Kuhl, but that it did not have the "electrical and computer component configuration" information requested.
A hearing was conducted before the county court on November 17, 2005, to determine whether any further items as requested in Kuhl's motion should be produced by the State. During this hearing, the "electrical and computer component *706 configuration" information being sought by Kuhl was described as the "source code" for the machine. The court asked Kuhl's attorney to explain further what he meant by the source code. Kuhl's attorney responded:
My understanding, Judge, is that it's the DNA of a machine. It is a computer program that tells them  the machine what to do, so you push a button, start the machine, and you get a [breath test] result of .11. There is a number of mechanical and electrical synapses that occur from point "A" to the end point, and it's  the computer  the source code is the underlying computer technology in language that tells the machine to do what it's supposed to do.
The parties stipulated that the manufacturer of the DataMaster machine at issue in this case would not provide the source code to the State. We have set forth additional details about the November 17 hearing as necessary in the analysis section below.
The county court entered an order on November 29, 2005, ruling further on Kuhl's motion. The court was convinced by the representations made by the State, and not refuted by Kuhl, that the State was not in possession of the items described in paragraph 3 of Kuhl's motion. The court cited Neb.Rev.Stat. § 29-1914 (Reissue 1995) concerning the limitation of orders of discovery to items or information "`within the possession, custody, or control of the state or local subdivisions of government'" and found it unquestionable in the present case that the State was not in possession of "anything other than what it ha[d] already produced." Accordingly, aside from the items already produced by the State, the court denied Kuhl's motion as to all other remaining production sought by his motion.
Trial was held before the county court beginning on January 18, 2006. The evidence shows that on May 12, 2005, at approximately 9:40 p.m., Omaha police officer Michael Joseph Frank was sitting in his cruiser, operating stationary radar, when his attention was drawn to a 1999 Subaru Forester. Frank estimated that the Subaru was traveling at approximately 45 miles per hour in a 30-mile-per-hour zone and confirmed its speed of 44 miles per hour with radar. Frank radioed ahead to Officer Steven J. Garcia, another Omaha police officer, identified the Subaru, and advised Garcia that it was traveling at an excessive rate of speed. Garcia caught up to the Subaru and pulled it over for speeding.
After stopping the Subaru, Garcia administered a number of field sobriety tests to Kuhl, and Kuhl failed to perform some of the tests up to Garcia's expectations. Garcia placed Kuhl under arrest for speeding and suspicion of DUI and transported him to a police station. At the station, Garcia read Kuhl a postarrest chemical test advisement form, and both Garcia and Kuhl signed the form. Garcia observed Kuhl perform a breath test and then cited Kuhl for speeding and DUI.
Officer James Brady, a senior crime laboratory technician with the Omaha Police Department, testified concerning the breath test administered to Kuhl and the maintenance of the DataMaster machine used to test Kuhl's breath. Brady's testimony established that Kuhl's breath was tested by a DataMaster machine located at police headquarters. Brady's testimony covered the specific identity of the actual machine used to test Kuhl's breath, the maintenance of the machine, the holders of various permits to both maintain and conduct tests on the machine in question, and the documentation relating to the maintenance of the machine. Patricia A. Osier, a *707 crime laboratory technician, testified to the administration of the test of Kuhl's breath, which test yielded a result of .100 of a gram of alcohol per 210 liters of breath.
Dr. John Vasiliades testified on behalf of the defense. Vasiliades acknowledged that he has not used the DataMaster machine regularly but has read the manual on the machine and kept up with the literature regarding the machine. Vasiliades testified to the chemical process by which alcohol is ingested by, absorbed into, and eliminated by a human; random increases and decreases in breath alcohol called "spiking"; the appropriate margin of error that Vasiliades believes should apply; and purported flaws with respect to a DataMaster machine as used for measuring breath alcohol, including various other substances that can be detected by infrared spectrophotometry.
Trial resumed on February 8, 2006, and the county court heard testimony from Kuhl. The county court entered an order on February 17 finding Kuhl guilty of speeding 11 to 15 miles per hour over the posted speed limit. With respect to the DUI charge, the court noted that Nebraska statutes provide two alternative bases, either of which can serve as the basis for convicting an individual of DUI. With regard to the first basis, the operation of the vehicle itself, the court found the evidence adduced by the State insufficient to establish guilt beyond a reasonable doubt. The court noted that while Garcia, who administered certain field sobriety tests, testified that he did so to determine Kuhl's level of intoxication, there was insufficient testimony to establish a relationship between Kuhl's performance on the field sobriety tests and his ability to operate a motor vehicle. With respect to the second basis, the concentration of alcohol in the driver's breath, after considering the evidence adduced by both sides, the court was convinced beyond a reasonable doubt that Kuhl had a concentration of alcohol in his breath in excess of the allowable limits, and accordingly, it found Kuhl guilty of DUI.
A sentencing hearing was conducted before the county court on March 2, 2006. During the sentencing hearing, Kuhl's attorney asked the court about the possibility of the use of "the ignition interlock device for motor code." The court declined Kuhl's request to impose the use of an ignition interlock device.
The county court entered an order imposing sentence on March 2, 2006. The court sentenced Kuhl to probation for a period of 12 months and revoked Kuhl's license for the first 60 days of the probationary period. The court also fined Kuhl $400 and ordered Kuhl to attend and complete a DUI class as well as a victim impact class.
Kuhl appealed his convictions to the district court, and on November 8, 2006, the district court entered an order affirming the "judgment of conviction and sentence" imposed by the county court. Kuhl subsequently perfected his appeal to this court.

ASSIGNMENTS OF ERROR
Kuhl asserts that the county court erred in (1) not requiring the State to turn over the source code for the DataMaster machine, (2) failing to allow Kuhl to withdraw his previously entered pleas of not guilty, (3) failing to allow Kuhl to call an expert witness at the November 17, 2005, hearing and not allowing two technical documentation exhibits into evidence at that hearing, (4) incorrectly applying a maintenance document marked exhibit 10 at the time of trial, (5) misapplying and misinterpreting the testimony of Vasiliades, (6) not applying Vasiliades' unrebutted testimony regarding the margin of error of .030 grams per 210 liters of breath to the present case, *708 and (7) refusing to allow the use of an ignition interlock device as a condition of probation.

STANDARD OF REVIEW
[1-3] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeal, and as such, its review is limited to an examination of the county court record for error or abuse of discretion. State v. Dittoe, 269 Neb. 317, 693 N.W.2d 261 (2005). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. Id. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Id.

ANALYSIS

Discovery of Source Code.
[4] Kuhl asserts that the county court erred in not requiring the State to turn over the source code for the DataMaster machine. Kuhl argues that the court should have either required the State to turn over the source code or dismissed the case due to the State's inability to turn over the source code; or, alternatively, that the court should have prevented the State from using the results of the breath test.
The district court found that the county court correctly limited discovery to items or information within the possession, custody, or control of the State. The district court also found that the county court correctly determined that the State should not be prevented from using the results of the breath test which were "subject to the source code." The district court found that the State showed that the DataMaster machine was reliable at the time the testing occurred and that the results' use was correctly allowed by the county court.
[5-7] Discovery in a criminal case is generally, and in the absence of a constitutional requirement, controlled by either a statute or court rule. State v. Kinney, 262 Neb. 812, 635 N.W.2d 449 (2001). A trial court is vested with broad discretion in considering discovery requests of defense counsel, and error can be predicated only upon an abuse of discretion. State v. Null, 247 Neb. 192, 526 N.W.2d 220 (1995). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. State v. Floyd, 272 Neb. 898, 725 N.W.2d 817 (2007).
Section 29-1914 discusses limitation of discovery orders in criminal cases. Section 29-1914 provides:
Whenever an order is issued pursuant to the provisions of section 29-1912 or 29-1913, it shall be limited to items or information within the possession, custody, or control of the state or local subdivisions of government, the existence of which is known or by the exercise of due diligence may become known to the prosecution.
[8-10] Kuhl urges this court to balance his Sixth Amendment right of confrontation against the clear requirements of § 29-1914 and against any trade secret right that the manufacturer of the machine in question might have. Kuhl argues that he should be assured the opportunity to examine the evidence against him and that this requires the State to turn over the source code to allow him to, "in a way, cross examine the machine and determine if it was in proper working order." Brief for appellant at 7. Section 29-1914 provides that discovery orders "shall be limited to items or information within the possession, *709 custody, or control" of the State. Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. State v. Pathod, 269 Neb. 155, 690 N.W.2d 784 (2005). Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. Id. As a general rule, the word "shall" is considered mandatory and is inconsistent with the idea of discretion. Id. The record is clear that the source code is not in the State's possession and that the manufacturer of the machine in question considers the source code to be a trade secret and the proprietary information of the company. We find no abuse of discretion in the county court's decision with respect to the discoverability of the source code.

Withdrawal of Pleas.
[11] Kuhl asserts that the county court erred in failing to allow Kuhl to withdraw his previously entered pleas of not guilty in order to attack the ordinance under which he was charged with DUI as creating an unconstitutional presumption. Kuhl references a defendant's right under the Fifth Amendment and then argues:
However, in a[DUI] case, the Defendant is presumed guilty if [he or she tests] .08 or above on the breathalyzer. Once the results of this test are heard in the courtroom, the Defendant is then required to take some affirmative action to show his/her non-guilt. This rebuttable presumption stands in stark contrast to a right guaranteed to a criminal Defendant.
Brief for appellant at 9.
[12-14] In order to bring a constitutional challenge to the facial validity of a criminal statute, the proper procedure is to file a motion to quash or a demurrer. State v. Liston, 271 Neb. 468, 712 N.W.2d 264 (2006). Once a defendant has entered a plea, or a plea is entered for the defendant by the court, the defendant waives all facial constitutional challenges to a statute unless that defendant asks leave of the court to withdraw the plea and thereafter files a motion to quash. Id. Prior to sentencing, the withdrawal of a plea forming the basis of a conviction is addressed to the discretion of the trial court, and its ruling will not be disturbed on appeal absent an abuse of that discretion. State v. Schneider, 263 Neb. 318, 640 N.W.2d 8 (2002). See, also, Goemann v. State, 94 Neb. 582, 143 N.W. 800 (1913) (holding that refusal to permit defendant charged with gambling to withdraw plea of not guilty to object to variance between information and original complaint and file plea in abatement was not abuse of discretion); Ingraham v. State, 82 Neb. 553, 118 N.W. 320 (1908) (request for leave to withdraw plea of not guilty and file plea in abatement is addressed to sound discretion of trial court, and reviewing court will not disturb ruling thereon unless record clearly shows abuse of discretion).
Kuhl did not cite to any authority in support of his argument that the ordinance or statute in question is constitutionally infirm. The district court found that the county court's decision not to allow Kuhl to withdraw his not guilty plea and thereafter attack the constitutionality of the ordinance or its underlying statute was clearly within the discretion of the county court. We agree, and we find no abuse of discretion in the county court's refusal to allow Kuhl's withdrawal of his previously entered pleas of not guilty.

Rulings at November 17, 2005, Hearing.
[15] Kuhl asserts that the county court erred in failing to allow Kuhl to call an *710 expert witness at the November 17, 2005, hearing and not allowing two technical documentation exhibits into evidence at that hearing; however, as noted by the district court, contrary to Kuhl's assertions, those exhibits were received into evidence by the county court at the November 17 hearing.
At the November 17, 2005, hearing, Kuhl sought to present expert testimony as to "the importance of the source code in the proper defense of [Kuhl]." Brief for appellant at 9. The court initially asked Kuhl's attorney for a basic description of the source code. The court then stated, "I don't know that I need your expert to elaborate or provide me with a more technical description of what you've referred to as the source code. If the State doesn't have it, I'm not going to order them [sic] to produce it." After hearing argument from the parties, the court inquired, "Is [Kuhl's expert] going to be able to help me resolve whether the State has these things or not?" Kuhl's attorney indicated that his expert would not be able to help the court make such a determination, and the court again declined to hear testimony from Kuhl's expert, "because it's not relevant." Kuhl's attorney then asked to make an offer of proof and sought to have his expert testify during the course of the offer of proof. The county court allowed Kuhl to make an offer of proof by "paraphras[ing] what the expert would say," which Kuhl's counsel did. The court also received the two technical documentation exhibits for purposes of Kuhl's offer of proof. Those exhibits are documents concerning the source code and the accuracy of a particular type of breath testing machine.
[16] The district court determined that the county court's refusal to allow Kuhl's expert to testify as to "the science of the source code" during pretrial proceedings was not an abuse of discretion given the county court's determination that the State did not have a legal obligation to produce evidence not in its possession. The admission of expert testimony is ordinarily within the discretion of the trial court, and its ruling will be upheld in the absence of an abuse of discretion. State v. Duncan, 265 Neb. 406, 657 N.W.2d 620 (2003). The county court determined that testimony from Kuhl's expert was not relevant to a determination of whether the State should be required to turn over the source code.
[17, 18] Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. State v. Iromuanya, 272 Neb. 178, 719 N.W.2d 263 (2006), cert. denied ___ U.S. ___, 127 S.Ct. 1129, 166 L.Ed.2d 893 (2007); Neb.Rev.Stat. § 27-401 (Reissue 1995). The exercise of judicial discretion is implicit in determinations of relevancy under § 27-401 and prejudice under Neb.Rev.Stat. § 27-403 (Reissue 1995), and a trial court's decision under these evidentiary rules will not be reversed absent an abuse of discretion. State v. Davlin, 272 Neb. 139, 719 N.W.2d 243 (2006).
The record shows that the testimony of Kuhl's expert was not relevant to the questions before the county court, those being whether the State had access to the source code for the machine used to test Kuhl's breath and whether the State should be required to turn over the source code. We have already affirmed the district court's upholding of the county court's rulings on the discoverability of the source code. Accordingly, we find no abuse of discretion in the county court's refusal to allow Kuhl's expert to testify further about the source code.

*711 Trial Exhibit 10.

[19] Kuhl asserts that the county court erred in incorrectly applying exhibit 10 at the time of trial. The record does not include a copy of exhibit 10, but it was identified at trial as being a copy of the scheduled maintenance and calibration log for the DataMaster machine at issue from January 21 through March 2, 2005. Brady, a senior crime laboratory technician, testified that exhibit 10 was part of the maintenance and calibration that is necessary to ensure that the DataMaster machine is working properly. Kuhl's counsel questioned Brady extensively about the values shown on exhibit 10 and then offered exhibit 10 into evidence. The State observed that the maintenance checks reflected on exhibit 10 were "[v]alid until [the] 2nd of March, '05," and had an expiration date of May 8, prior to when the test of Kuhl's breath was given. The State then objected as to the relevance of exhibit 10. The court stated that it was not sure whether exhibit 10 showed a problem with the machine, "because neither [the prosecutor nor Kuhl's counsel had] asked the ultimate question of [Brady]," and sustained the objection until the actual relevance was determined. Upon redirect examination, Brady was questioned further about the data shown on exhibit 10. Brady reaffirmed his earlier testimony that on May 12, the DataMaster machine in question was working properly and was in compliance with administrative regulations.
Kuhl argues that exhibit 10 contained evidence that the DataMaster machine was operating outside the acceptable margin of error and asserts that accordingly, the foundation for the test results of Kuhl's breath was not met on the part of the State, making the test of Kuhl's breath inadmissible. The maintenance checks reflected in exhibit 10 were no longer valid as of the date when Kuhl's breath was tested, and a review of Brady's testimony makes it clear that the machine was working properly on the date in question. Brady testified without objection that the machine was operating properly on May 12, 2005. Additionally, a maintenance and calibration log for April 24 that was valid until June 4 and a report from a 190-day check of the machine performed on April 24 for the period from April 24 to November 14 were both received into evidence without objection. That log and report show that the machine was operating within the target values and acceptable ranges for the breath test simulator solutions tested. We observe that Osier, a crime laboratory technician, testified without objection that the result of Kuhl's breath test was .100 of a gram of alcohol per 210 liters of breath. Further, Kuhl's breath test result document was admitted into evidence without objection. As did the district court, we determine that the county court was not clearly wrong in excluding exhibit 10 from evidence.

Testimony of Vasiliades.
Kuhl asserts that the county court erred in misapplying and misinterpreting the testimony of Vasiliades. Kuhl also asserts that the county court erred in not applying Vasiliades' unrebutted testimony regarding the margin of error of .030 grams per 210 liters of breath to the present case. Kuhl observed that the State did not offer any expert testimony and that most of Vasiliades' testimony was unrebutted. Kuhl argues that although Vasiliades' testimony was the only factual evidence on issues such as the reliability of the DataMaster machine, the court still found Kuhl guilty of DUI. Kuhl argues further that the court did not give Vasiliades' testimony the correct weight and "incorrectly applied his testimony." Brief for appellant at 12.
[20, 21] Triers of fact are not required to take opinions of experts as binding upon *712 them. Jones v. Meyer, 256 Neb. 947, 594 N.W.2d 610 (1999). In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. State v. Gutierrez, 272 Neb. 995, 726 N.W.2d 542 (2007). Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. Id. We decline to reweigh the testimony of Vasiliades. Concerning Vasiliades' testimony, the district court observed that the county court was the trier of fact and was "permitted to give the weight to [Vasiliades'] testimony that it found appropriate to do." The district court found Kuhl's assignment of error regarding the county court's application and interpretation of Vasiliades' testimony to be without merit. The district court also found Kuhl's assertion that the county court erred in "not applying the unrebutted margin of error of .03 to the test in question" to be without merit. As did the district court, we find no error in the county court's determinations as to the credibility and weight of Vasiliades' testimony.
[22, 23] Kuhl notes the lapse in time between when Kuhl was stopped and when the breath test was administered. Kuhl refers to concerns raised in Vasiliades' testimony about whether a defendant's breath alcohol content at the time of testing accurately reflects the content at the time that defendant was driving a motor vehicle. However, Nebraska law provides that matters of delay between driving and testing go to the weight of the breath test results, rather than to the admissibility of the evidence. State v. Kubik, 235 Neb. 612, 456 N.W.2d 487 (1990). A valid breath test given within a reasonable time after the accused was stopped is probative of a violation of the DUI statute. Id. There is nothing in the record to suggest that Kuhl's breath test was not given within a reasonable time after Kuhl was stopped. Kuhl's assignments of error relating to this issue are without merit.

Use of Ignition Interlock Device.
[24-26] Kuhl asserts that the county court erred in refusing to grant the use of an ignition interlock device as a condition of probation. Neb.Rev.Stat. § 60-6,211.05(1) (Supp.2003) provides:
If an order of probation is granted . . . the court may order the defendant to install an ignition interlock device of a type approved by the Director of Motor Vehicles on each motor vehicle operated by the defendant. . . . The device shall, without tampering or the intervention of another person, prevent the defendant from operating the motor vehicle when the defendant has an alcohol concentration greater than the levels prescribed in section 60-6,196.
At the sentencing hearing, the court responded as follows to the request of Kuhl's attorney to consider the use of an interlock device:
With all d[ue] respect, I have not in my career yet, allowed anyone ignition interlock. I do not intend to. One of the most consequential penalties that I can impose is the loss of driving privileges. And that's  That's the one that I think is going to affect everybody. People with a fat wallet can always pay a $400 fine, so I've never looked at a fine in a DUI case as necessarily a severe penalty. But not being able to drive, if that doesn't get it through to people that they shouldn't drink and drive, I don't know what will. So I  That's a meaningful penalty, and I have not yet imposed the ignition interlock, nor do I *713 intend to in the  until I retire, so [the] request is denied.
When a court sentences a defendant to probation, it may impose any conditions of probation that are authorized by statute. State v. Lobato, 259 Neb. 579, 611 N.W.2d 101 (2000). The sentencing court may impose such reasonable conditions of probation as it deems necessary or likely to ensure that the offender will lead a law-abiding life. Id.
Kuhl argues that the loss of driving privileges, a fine, and the "great expense of hiring an attorney to fight this matter" have been a great enough penalty. Brief for appellant at 13. Clearly the county court disagreed and did not find the use of an ignition interlock device to be a condition necessary or likely to ensure that Kuhl would lead a law-abiding life. As did the district court, we find nothing in the record to suggest that the county court abused its discretion in rejecting the use of this device.

CONCLUSION
The county court did not abuse its discretion in not requiring the State to turn over the source code, refusing to allow Kuhl to withdraw his not guilty pleas, not allowing Kuhl to call an expert witness at the November 17, 2005, hearing, or rejecting the use of an ignition interlock device. Contrary to Kuhl's assertions, the two technical documentation exhibits he claims were excluded were received into evidence by the county court at the November 17 hearing. The county court did not err in excluding exhibit 10 from evidence at trial or in its interpretation and application of Vasiliades' testimony.
The county court's decisions conform to the law, are supported by competent evidence, and are neither arbitrary, capricious, nor unreasonable. The district court did not err in affirming Kuhl's "judgment of conviction and sentence."
AFFIRMED.