755 N.W.2d 389 (2008)
276 Neb. 497
STATE of Nebraska, Appellee,
v.
Stephen C. KUHL, Appellant.
No. S-06-1393.
Supreme Court of Nebraska.
September 5, 2008.
*392 Steven Lefler, of Lefler Law Office, Omaha, for appellant.
Paul D. Kratz, Omaha City Attorney, Martin J. Conboy III, Omaha City Prosecutor, and J. Michael Tesar, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
In a bench trial, Stephen C. Kuhl was found guilty of driving under the influence (DUI) in violation of Omaha Mun. Code, ch. 36, art. III, § 36-115 (2001). The conviction was based on the trial court's finding that Kuhl was operating a motor vehicle while having a concentration of at least.08 of 1 gram or more by weight of alcohol per 210 liters of his breath. Kuhl argues that the trial court should have given him the benefit of the margin of error for the machine used to test his breath alcohol content. His expert's testimony was not *393 rebutted by the State. He also claims that his right to confront witnesses against him was violated by the admission of the test results when Kuhl did not have access to the machine's source code. We affirm.

BACKGROUND
On May 12, 2005, at approximately 9:40 p.m., Kuhl was pulled over for speeding. Officer Steven J. Garcia noticed that Kuhl had an odor of alcohol emanating from him and that he had slurred speech. Kuhl admitted to having consumed four beers over the course of the evening, and Garcia asked Kuhl to take some field sobriety tests. The details of these tests are not relevant to this appeal, because the trial court found that there was insufficient evidence to establish a relationship between Kuhl's field sobriety test results and his ability to operate a motor vehicle. Kuhl was taken to the police station, where he submitted to an analysis of his breath by a DataMaster 130457 machine at approximately 10:40 p.m. The test yielded a result of .100 of 1 gram of alcohol per 210 liters of breath.
Kuhl was charged with violation of Omaha Mun. Code § 36-115, and, during discovery, Kuhl sought the "source code" for the DataMaster, which Kuhl explained was the "underlying computer technology in language that tells the machine to do what it's supposed to do." The parties stipulated that the State did not have the source code in its possession and that the manufacturer of the DataMaster would not provide the source code to the State. The trial court found that the source code was not within the State's "possession, custody, or control," as would be required to compel discovery under Neb.Rev.Stat. § 29-1914 (Reissue 1995).
At trial, Officer James Brady, a senior crime laboratory technician with the Omaha Police Department, testified about the maintenance of the DataMaster, the holders of various permits to both maintain and conduct tests on the DataMaster, and the documentation relating to maintenance of the machine. Patricia A. Osier, a crime laboratory technician, testified about the administration of the test conducted on Kuhl. The test results were admitted into evidence without objection, and the State concluded its case in chief.
Dr. John Vasiliades, an expert in the field of forensic toxicology, testified on behalf of Kuhl. Vasiliades explained the chemical processes by which alcohol is ingested, absorbed, and eliminated, and he described random increases and decreases in breath alcohol called "spiking." He testified further that the infrared spectrophotometric technique used by the DataMaster did not always distinguish alcohol from other volatile substances that might be present for other reasonsfor example, because the subject had been around solvent fumes. Vasiliades opined that the test was inaccurate because the "partition ratio" used to extrapolate the subject's blood alcohol from the breath sample did not reflect the average of the population. He also felt that the test did not meet the standards of forensic toxicology because it took two readings of the same breath sample rather than two separate breath samples. He opined that, "[f]rom the forensic point of view, if you can not [sic] show duplication, the result should not be used for forensic purposes." Vasiliades noted studies showing that infrared spectrophotometric breath alcohol tests might inaccurately read "mouth alcohol" that could have returned to the oral cavity if the subject burped.
Based on his training and experience, Vasiliades stated his opinion within a reasonable degree of scientific certainty that the margin of error for the DataMaster was plus or minus .03 grams. In support *394 of this opinion, Vasiliades cited a study done 15 years earlier on a different version of the DataMaster machine. In that study, 2,668 individuals had given two consecutive breath samples in the DataMaster, and the average correlation between the breath alcohol reading for the two breaths was ".95." Vasiliades described this as the "Standard Error of Estimate" at "one standard deviations." But, he explained that "[f]or forensic purposes you need to multiply that times three, because we want to be 100 percent certain of the results which we report. . . . Margin of errors on any . . . analytical technique, you need to go up three standard deviations." When questioned further regarding the study on which his opinion was based, Vasiliades testified that he was giving the current DataMaster the "benefit of the doubt, because your data may be worse than that, I don't know. Unless you do the study, and actually you probably should do that study to show that  what your margin of error is."
The trial court found Kuhl guilty of DUI based solely on its finding that Kuhl was operating a motor vehicle while having a concentration of at least .08 of 1 gram or more by weight of alcohol per 210 liters of his breath. The trial court and the Nebraska Court of Appeals affirmed the judgment.[1] We granted Kuhl's petition for further review.

ASSIGNMENTS OF ERROR
Kuhl asserts, consolidated and restated, that the Court of Appeals should have reversed his conviction because (1) he was unable to examine the source code for the DataMaster machine used for the test, (2) the trial court failed to admit evidence concerning the importance of the Data-Master source code, (3) the trial court denied Kuhl's request to withdraw his plea in order to attack the constitutionality of a statute and ordinance that allegedly create a "rebuttable presumption" of guilt once test results are entered into evidence, and (4) the trial court failed to apply the unrebutted.03 margin of error testified to by Kuhl's expert witness.

STANDARD OF REVIEW
On a claim of insufficiency of the evidence, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt.[2]
When deciding questions of law, this court is obligated to reach conclusions independent of those reached by the trial court.[3]
Withdrawal of a plea is addressed to the discretion of the trial court, and its ruling will not be disturbed on appeal absent an abuse of that discretion.[4]

ANALYSIS

SOURCE CODE
Kuhl's first argument is that the admission of the Breathalyzer results when Kuhl did not have access to the source code of the machine violated his right to confrontation under the Sixth Amendment to the U.S. Constitution. The trial court found *395 that the source code was not within the State's "possession, custody, or control," as would be required to compel discovery under § 29-1914. Kuhl does not challenge this finding. At trial, Kuhl did not attempt to serve a subpoena duces tecum on the DataMaster manufacturer. Still, according to Kuhl, "the State should be required to make every reasonable attempt to recover the source code, and, if the patent holder is still uncooperative, then that is when the court needs to evaluate the importance of a trade secret as opposed to a fundamental right guaranteed by our Constitution."[5] He then concludes: "If the State is unwilling or unable to turn over the source code, the results of the breath test should be inadmissible. . . ."[6]
While Kuhl may have made these arguments during the pretrial discovery hearing, there is nothing in the record to reflect that Kuhl objected to the admission of the test results which he now asserts violated his right to confrontation. A defendant waives the right on appeal to assert prejudicial error concerning evidence received without objection.[7] Thus, in the absence of plain error, we cannot review Kuhl's claim that the admission of the DataMaster results violated his right to confrontation.[8]
Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.[9] We find no plain error in the admission of the DataMaster test results in this case.[10] Kuhl's first assignment of error is without merit. And having so found, we can find no error in the court's refusal to allow Kuhl's offer of proof of an expert witness to show the importance of a source code to challenging the breath test results. Therefore, Kuhl's second assignment of error is also without merit.

WITHDRAWAL OF PLEA
Next, Kuhl argues that the trial court erred in refusing to allow him to withdraw his plea. Once a defendant has entered a plea, the defendant waives all facial constitutional challenges to a statute unless that defendant asks leave of the court to withdraw the plea and thereafter files a motion to quash.[11] Withdrawal of a plea is addressed to the discretion of the trial court, and its ruling will not be disturbed on appeal absent an abuse of that discretion.[12] An abuse of discretion occurs when a trial court's determination is based upon reasons that are untenable or unreasonable or if its action is clearly against *396 justice or conscience, reason, and evidence.[13]
At the pretrial hearing, Kuhl argued that he should be allowed to withdraw his plea as follows:
I think I'm 99% percent [sic] sure you probably won't let me do this, I'd like to withdraw my previous entered pleas of not guilty, and allow me to argue point number 3 in my motion about the fact that the use of the machine creates a rebuttable presumption, therefore, it's unconstitutional, because I think it invades my client's Fifth Amendment Rights. Obviously, in the future, from now on, I  before my client tenders a plea, I will be found [sic] an appropriate motion to quash or the demurer [sic]. To attack the constitutionality, I have in fact, noticed in, the attorney general's office as I'm required to do so, whenever I ack-the cons  attack the constitutionality with particular statute. So I make that small pitch.
Kuhl did not present any evidence in support of his motion to withdraw the plea.
A DUI offense can be shown either by evidence of physical impairment and well-known indicia of intoxication or simply by excessive alcohol content shown through a chemical test.[14] In State v. Kubik,[15] we held that there was a rational relationship between proscribing a particular concentration of breath alcohol and the purpose of prohibiting people from driving while under the influence of drugs or alcohol. In addition, in other cases, we have said that it is a judicial function to determine whether the breath test evidence is sufficient to sustain a conviction[16] and that submission of the blood alcohol test results do not create a "presumption of guilt."[17] We find no abuse of discretion in the trial court's refusal to allow Kuhl to withdraw his plea.

MARGIN OF ERROR
Finally, Kuhl asserts that under our case law, if the defendant presents unrebutted evidence at trial as to the margin of error for the breath test reading, then that defendant must be given the benefit of that margin of error. In other words, he asserts that it is clear error for the trial court to find the defendant guilty of an impermissible breath alcohol content when the result, calculated with the margin of error established by such unrebutted testimony, would fall below the legal limit.
While Kuhl failed to make any motions for directed verdict either at the close of the State's case in chief or at the close of all the evidence, he may still challenge the sufficiency of the evidence to sustain his convictions.[18] Thus we will address Kuhl's argument that the evidence was insufficient to support his DUI conviction because Vasiliades presented the only evidence as to the DataMaster's margin of error, which would have placed Kuhl's breath test results below the statutory limit of .08. When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most *397 favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[19]
A DUI violation is a single offense that can be proved in more than one way.[20] The State must prove, beyond a reasonable doubt, that the defendant was operating or in actual physical control of a motor vehicle either (1) while under the influence of alcoholic liquor or of any drug, (2) when having a concentration of .08 of 1 gram or more by weight of alcohol per 100 milliliters of his or her blood, or (3) when having a concentration of .08 of 1 gram or more by weight of alcohol per 210 liters of his or her breath.[21]
To prove blood or breath alcohol content, Neb.Rev.Stat. § 60-6,201 (Reissue 2004) sets forth that, to be considered valid, the tests must be performed according to methods approved by the Department of Health and Human Services Regulation and Licensure and by an individual possessing a valid permit from that department, a licensed health care provider, or a certified clinical laboratory. Section 60-6,201(1) provides that any test,
if made in conformity with the requirements of this section, shall be competent evidence in any prosecution under a state statute or city or village ordinance involving operating a motor vehicle while under the influence of alcoholic liquor or drugs or involving driving or being in actual physical control of a motor vehicle when the concentration of alcohol in the blood or breath is in excess of allowable levels.
In DUI cases where the State's own experts establish that the test used to measure the defendant's alcohol level has an inherent margin of error that, if applied in the defendant's favor, would result in a measurement below the legal limit, we have held that the State has failed to meet its burden of proof for a conviction based solely on test results.[22] In State v. Bjornsen, where the State's chemist testified that the margin of error could place the test results below the legal limit, we rejected the State's argument that statutes stating that tests made in conformity therewith "shall be competent evidence" make any variances inherent in the testing process irrelevant. We explained:
While the Legislature has the acknowledged right to prescribe acceptable methods of testing for alcohol content in body fluids and perhaps even the right to prescribe that such evidence is admissible in a court of law, it is a judicial determination as to whether this evidence is sufficient to sustain a conviction, if the evidence is believed. The Legislature has selected a particular percent of alcohol to be a criminal offense if present in a person operating a motor vehicle. It is not unreasonable to require that the test, designed to show that percent, do so outside of any error or tolerance inherent in the testing process.[23]
*398 In State v. Adams, where the State's expert testified that the margin of error inherent to the blood test conducted could place the defendant's levels under the legal limit, we said: "[W]hen there is a margin of error in a chemical test for alcohol, the test result must be adjusted and the defendant given the benefit of the adjusted reading."[24]
We also applied that principle in State v. Burling.[25] At the time Burling was decided by this court, the DUI statute necessitated the conversion of the chemical analysis of a subject's breath to the amount by weight of alcohol in a subject's blood.[26] The defendant presented expert testimony that the breath test device used an inaccurate conversion formula and that giving the defendant the benefit of the actual range of breath-to-blood distribution ratios in the population would place his blood alcohol level below the legal limit. The State failed to present any evidence to controvert this testimony. We held that because the testimony as to the margin of error was uncontroverted and because we must adjust the defendant's test results so as to give the defendant the benefit of a margin of error, the evidence was clearly insufficient to establish a prohibited blood alcohol level.[27]
In contrast, in State v. Hvistendahl,[28] the State's expert and an expert called by the defendant disputed the inherent margin of error for the testing device. We explained that "when there is a conflict in the evidence as to what that margin of error actually is, we will affirm the decision of the trier of fact so long as there is sufficient evidence in the record, if believed, to sustain its finding of guilt."[29]
In State v. Baue,[30] we relied on Hvistendahl and departed from our conclusion in Burling. We noted that the trial court is not bound to accept the conclusion of a particular expert.[31] And "[w]hether an adjustment is required is dependent upon the credible evidence in each case."[32] The weight and credibility of an expert's testimony is a question for the trier of fact.[33]
Applying these principles, in Baue, we held that the trial court was correct in denying the defendant's motion in limine to exclude the defendant's breath test results from the jury. Vasiliades testified in Baue as well, and he opined that the Intoxilyzer Model 401 IAS, the device used in that case, had an inherent analytical error of plus or minus .03. If this margin had been applied in the defendant's favor, his test results would have fallen below the legal limit. The State offered no rebuttal to Vasiliades' testimony during the hearing on the motion in limine. But we explained:
[W]hile Vasiliades' opinion with respect to the margin of error was not specifically rebutted during the pretrial hearing *399 at which he testified, it was not binding upon the trial court, and [the defendant] was not entitled to have the test result adjusted downward as a matter of law at that time.[34]
We further stated that to the extent Burling was inconsistent with our holding, it was overruled.
Kuhl points out that in Baue, the testimony at trial, as opposed to the hearing on the motion in limine, was controverted. Thus, he asserts that our holding in Burling is still valid and stands for the proposition that the test results must be adjusted to unrebutted trial testimony as to the margin of error.
In Baue, we observed that the State presented evidence at trial to dispute Vasiliades' opinion as to the margin of error (the State's expert testified that the test was accurate to within 5 percent). We then cited Hvistendahl and concluded that "the trial court did not err in refusing to adjust the test result as a matter of law and in submitting the issue to the jury for determination."[35]
We recognize that our reference to Hvistendahl and the facts of Baue may have caused some confusion. To be clear, we hold that the evidence for being guilty of driving with a breath or blood alcohol content over the statutory limit is not necessarily insufficient simply because the defendant's expert testimony as to the margin of error is not specifically rebutted by expert testimony from the State. It is a longstanding principle that a test made in compliance with the statutory scheme, and its corresponding regulations, is sufficient to make a prima facie case on the issue of blood alcohol concentration.[36] That scheme does not require evidence as to any margin of error for the testing device. And the trial court is not required to accept as credible any expert testimony called by the defendant to rebut the State's prima facie case.
Currently, § 60-6,201 requires that a chemical test be performed in accordance with the procedures approved by the Department of Health and Human Services Regulation and Licensure and by an individual possessing a valid permit issued by that department for such purpose.[37] We have explained that there are four foundational elements the State must establish for admissibility of a breath test in a DUI prosecution: (1) that the testing device was working properly at the time of the testing, (2) that the person administering the test was qualified and held a valid permit, (3) that the test was properly conducted under the methods stated by the Department of Health and Human Services Regulation and Licensure, and (4) that all other statutes were satisfied.[38]
Kuhl does not argue that this prima facie case was not made during his trial. While Kuhl attempted to rebut this prima facie case with Vasiliades' expert testimony, the trial court apparently did not find this testimony to be credible. We note that Vasiliades himself admitted that he knew of no studies that specifically related to the DataMaster used to test Kuhl and that such a particularized study would be necessary to accurately *400 access the machine's margin of error. We find the evidence sufficient to support the trial court's determination that Kuhl was driving while having a concentration of at least .08 of 1 gram or more by weight of alcohol per 210 liters of his breath.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the Court of Appeals affirming the judgment of the county court.
AFFIRMED.
NOTES
[1] See State v. Kuhl, 16 Neb.App. 127, 741 N.W.2d 701 (2007).
[2] State v. Fahlk, 246 Neb. 834, 524 N.W.2d 39 (1994).
[3] Id.
[4] State v. Schneider, 263 Neb. 318, 640 N.W.2d 8 (2002).
[5] Brief for appellant in support of petition for further review at 3.
[6] Id.
[7] See State v. Harms, 263 Neb. 814, 643 N.W.2d 359 (2002).
[8] See State v. Haltom, 264 Neb. 976, 653 N.W.2d 232 (2002).
[9] State v. Barfield, 272 Neb. 502, 723 N.W.2d 303 (2006), disapproved on other grounds, State v. McCulloch, 274 Neb. 636, 742 N.W.2d 727 (2007).
[10] See, e.g., U.S. v. Washington, 498 F.3d 225 (4th Cir.2007); City of Fargo v. Levine, 747 N.W.2d 130 (N.D.2008); State v. Chun, 194 N.J. 54, 943 A.2d 114 (2008); State v. Crager, 116 Ohio St.3d 369, 879 N.E.2d 745 (2007); Wimbish v. Com., 51 Va.App. 474, 658 S.E.2d 715 (2008).
[11] State v. Liston, 271 Neb. 468, 712 N.W.2d 264 (2006).
[12] State v. Schneider, supra note 4.
[13] State v. Archie, 273 Neb. 612, 733 N.W.2d 513, 273 Neb. 612, 733 N.W.2d 513 (2007).
[14] See, e.g., State v. Blackman, 254 Neb. 941, 580 N.W.2d 546 (1998).
[15] State v. Kubik, 235 Neb. 612, 456 N.W.2d 487 (1990).
[16] State v. Burling, 224 Neb. 725, 400 N.W.2d 872 (1987).
[17] State v. Dush, 214 Neb. 51, 54, 332 N.W.2d 679, 682 (1983).
[18] See State v. Gartner, 263 Neb. 153, 638 N.W.2d 849 (2002).
[19] Id.
[20] State v. Baue, 258 Neb. 968, 607 N.W.2d 191 (2000).
[21] Neb.Rev.Stat. § 60-6,196 (Reissue 2004).
[22] See, State v. Adams, 251 Neb. 461, 558 N.W.2d 298 (1997); State v. Bjornsen, 201 Neb. 709, 271 N.W.2d 839 (1978). See, also, State v. Munoz, 11 Neb.App. 266, 647 N.W.2d 668 (2002).
[23] State v. Bjornsen, supra note 22, 201 Neb. at 710-11, 271 N.W.2d at 840. See, also, State v. Burling, supra note 16; Haynes v. State, Dept. of Public Safety, 865 P.2d 753 (Alaska 1993); State v. Boehmer, 1 Haw.App. 44, 613 P.2d 916 (1980). Compare, e.g., Wieseler v. Prins, 167 Ariz. 223, 805 P.2d 1044 (Ct.App.1990); State v. Rucker, 297 A.2d 400 (Del.Super.1972); Nugent v. Iowa Dept. of Transp., 390 N.W.2d 125 (Iowa 1986) (revocation).
[24] State v. Adams, supra note 22. 251 Neb. at 467, 558 N.W.2d at 302.
[25] State v. Burling, supra note 16.
[26] See Neb.Rev.Stat. § 39-669.07 (Reissue 1984).
[27] State v. Burling, supra note 16.
[28] State v. Hvistendahl, 225 Neb. 315, 405 N.W.2d 273 (1987).
[29] Id. at 318, 405 N.W.2d at 276.
[30] State v. Baue, supra note 20.
[31] See, id.; State v. Hvistendahl, supra note 28.
[32] State v. Babcock, 227 Neb. 649, 653, 419 N.W.2d 527, 530 (1988). See, also. State v. Hvistendahl, supra note 28; State v. Baue, supra note 20.
[33] See id.
[34] State v. Baue, supra note 20, 258 Neb. at 979, 607 N.W.2d at 201.
[35] Id.
[36] State v. Kubik, supra note 15. See, also, e.g., State v. Fox, 177 Neb. 238, 128 N.W.2d 576 (1964).
[37] See McGuire v. Department of Motor Vehicles, 253 Neb. 92, 568 N.W.2d 471 (1997).
[38] See State v. Baue, supra note 20.