IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BURTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

EDWARD R. BURTON, APPELLANT.

Filed June 7, 2016.    No. A-15-789.

Appeal from the District Court for Buffalo County: JOHN P. ICENOGLE, Judge. Affirmed.

John H. Marsh, of Knapp, Fangmeyer, Aschwege, Besse & Marsh, P.C., and Tana M. Fye for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

MOORE, Chief Judge, and INBODY and RIEDMANN, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Edward R. Burton appeals from his jury conviction for first degree sexual assault in the district court for Buffalo County. On appeal, Burton alleges various evidentiary errors were made by the district court and an excessive sentence was imposed. Finding no merit to Burton's assigned errors, we affirm.

## II. FACTUAL BACKGROUND

Burton was charged with first degree sexual assault for actions alleged to have occurred during the evening of October 29 and early morning of October 30, 2014. On October 29, the victim, referred to as S.M., was asked by someone to purchase marijuana for that individual. S.M. agreed and arranged to get marijuana from a relative of Burton. After obtaining the marijuana and

- 1 -

delivering it to the individual, S.M. accepted an invitation by Burton to have drinks at a lounge. S.M., Burton, and his brother played pool and drank at the lounge.

S.M. consumed 5 to 6 rum and cokes during approximately a 1-hour period while at the lounge. She testified to feeling "sick and out of it" shortly thereafter, along with being dizzy and unable to walk straight.

S.M. testified that she was going to walk to her sister's house, but was offered a ride by Burton and his companion, Owens, whom S.M. had not previously met. S.M. accepted the invitation and the group left the lounge in Owens' vehicle. Owens drove and the group picked up some fast food, at which point S.M. vomited. They then stopped at a liquor store. After leaving the liquor store, S.M. was under the impression that she would be dropped off at her sister's house. Instead, Owens drove the group to his residence.

Once at Owens' residence, the group ate the fast food and proceeded to the living room couch. S.M. was sitting next to Burton on the couch. Owens retrieved marijuana from a bag in his room, then rolled a marijuana joint and lit it. Burton and Owens began smoking the joint, and S.M. joined in, smoking a little to avoid being known as a snitch. S.M. testified that Burton then blew marijuana smoke into her mouth several times until she said no and refused to participate.

S.M. testified that at this point her whole body began to tingle badly, possibly caused by the cumulative effect of alcohol, marijuana, and medication consumption. S.M. was taking various medications for treatment of depression, anxiety, and bipolar disorder. S.M. also testified to being a recovering substance abuser and acknowledged that she had been charged with false reporting during her period of substance abuse.

S.M. thereafter called a friend with her cell phone. She spoke over the phone with her face down on the couch, whispering because she was getting "bad vibes." She requested that the friend pick her up, but she apparently provided him with incorrect directions. S.M. also sent text messages to the same friend asking for help. S.M. chose not to call the police, although she was afraid based on her knowledge of Burton and Owens' reputation while living in Chicago. S.M. testified that she felt safer contacting the friend rather than the police.

S.M. testified that Burton kept asking her for "head," to which she responded by saying no repeatedly. S.M. then started to stand up, planning to grab her handbag and leave. However, S.M. testified that as she attempted to stand, her legs collapsed and she fell onto the floor between the couch and a coffee table. Because S.M. was weak she was unable to get off the floor.

S.M. described her condition at this point as passing in and out of consciousness. She testified that Burton then got down on the floor and proceeded to sexually assault her. S.M. responded by stating "stop" and "don't," then she started crying. S.M. also testified that she bit Burton's penis when he attempted oral intercourse and thereafter he penetrated her vagina with his penis.

After Owens told Burton someone was coming over and they needed to move, S.M. claims that Burton grabbed her feet and Owens grabbed her shoulders, carrying her through a doorway with hanging beads into a little girl's room, wherein she was placed on the floor. While moving her, S.M. testified that Owens started laughing and said that he was standing on S.M.'s hair. S.M. indicated that her head was jerked down when Owens stepped on her hair and she believed that

some of her hair was pulled out as a result. S.M. indicated that this occurred while she was on the floor between the couch and coffee table.

Once in the other room, S.M. testified that Burton continued to sexually assault her while she faded in and out of consciousness. She continued to protest by telling Burton "stop" and "don't" while crying. S.M. remembers awakening and hearing Burton in the doorway while Owens penetrated her, unaware that they had switched. She maintains that at no point was the sexual contact between herself and Burton consensual.

S.M. awoke early the following morning, while it was still dark. She gathered her belongings and quietly left the residence, believing that Burton was asleep on the couch. S.M. walked to her sister's house. S.M. did not tell her sister about the assault because she did not want to place an additional burden on her. S.M. did not report the assault that day.

S.M. went back to Owens' residence the day following the assault to search for her ID. After knocking on the door and receiving no response, S.M. called Burton. Following the call, Owens proceeded to let S.M. into the residence. S.M. entered the residence and searched for her ID. S.M. testified that there was a woman with blond hair in the house at the time of her search.

On the morning of October 31, 2014, two days after the alleged assault, S.M. attended a previously scheduled appointment at a local hospital with her therapist, Bridgett Mostek. During this appointment, S.M. disclosed the assault to Mostek. Mostek told S.M. to report the assault or she would. At S.M.'s request, Mostek contacted law enforcement.

### III. PROCEDURAL BACKGROUND

On December 2, 2014, Burton was charged by information in the district court for Buffalo County with first degree sexual assault, a Class II Felony, in violation of Neb. Rev. Stat. § 28-319 (Reissue 2008).

Trial was held on June 22 and 23, 2015. In addition to the testimony of S.M., as articulated in the previous section, testimony was given by David Stott, an officer with the Kearney Police Department; Mostek; and Ann Johnson, a nurse practitioner and sexual assault examiner affiliated with the Family Advocacy Network.

Mostek testified concerning S.M.'s therapeutic treatment and disclosure of the assault. She testified that S.M. suffered from "major depressive disorder, severe, recurrent without psychotic features" and "use of substances." Johnson testified regarding her sexual assault examination of S.M. on October 31, 2014. The examination did not produce evidence of acute trauma, and led to an unconfirmed diagnosis. However, Johnson testified that it is not unusual to not find injuries in adult cases of sexual assault, and that the nature of S.M.'s assault could have occurred without physical injury.

Officer Stott was dispatched to the hospital to investigate a sexual assault reported by Mostek concerning S.M. Stott testified that S.M. was visibly upset and crying when he arrived. He proceeded to interview S.M. in his patrol vehicle because it contained recording equipment. Mostek sat in the back seat of the vehicle for support. S.M. described the individuals who committed the alleged assault and assisted the police in establishing the location of Owens' residence. Stott later testified, over a hearsay objection, that S.M. identified the individuals during a photographic line-up. S.M. also described Owens' car, which was later located by police.

Over relevance and Rule 404 objections, Stott testified to various items that were found during the police investigation of Owens' residence, pursuant to the execution of a search warrant on November 1, 2014. These items included marijuana, hashish, drug paraphernalia, a sawed-off shotgun, and objects located in the little girl's bedroom, including bed sheets, blue beads consistent with what Owens had worn in his hair, and hair found on the bedroom floor.

During Stott's testimony, certain photographs were identified and admitted into evidence over Burton's respective Rule 403 and foundation objections.

The first photograph depicted a small amount of marijuana and drug paraphernalia (specifically rolling papers). Stott described this photograph as depicting "a small tin container that contained a small amount of marijuana, some rolling papers, and another small tin that I believe contained some old residue."

The second photograph was of long blond hair strands. S.M. testified that the hair depicted in this photograph was similar in length and color to her hair on the day of the assault and at trial. Over a hearsay objection, Stott testified that the blond hair was located between the couch and coffee table in the approximate area where S.M. advised that part of the assault allegedly occurred. The court gave a limiting instruction, advising the jury that this testimony was offered to explain what Stott was told by S.M. regarding her location during the events in question and to explain why officers were examining that area of the living room and picking up hair during their search. The court further advised the jury that Stott's testimony was not to be accepted as truth regarding S.M.'s statement.

Stott later testified, once again over a hearsay objection, that the hair stands were sent to a crime lab for DNA testing, but no confirmation was returned regarding the sample. No limiting instruction followed this later comment.

Other evidence introduced at trial included text message communications and call logs from S.M.'s cell phone and various photographs. The call logs and text messages offered by the State showed S.M.'s attempts to contact her friend for assistance while at Owens' residence. Text messages offered by Burton's attorney depicted communications between Burton and S.M. regarding her lost ID. Additional photographs were also received into evidence without objection, including photographs of Owens' vehicle, the exterior of Owens' house, the living room of the residence, the beaded door S.M. was carried through, the room she was placed in, and S.M.'s clothing.

At the conclusion of the State's case, Burton's attorney moved to dismiss for failure to prove a prima facie case, which motion was overruled. Burton did not put on a case in chief.

Following deliberations, the jury returned a verdict of guilty on the charge of first degree sexual assault. On August 25, 2015, the district court sentenced Burton to incarceration for a period of not less than 7 years nor more than 15 years, with credit for 288 days served.

Burton subsequently perfected this appeal.

## IV. ASSIGNMENTS OF ERROR

Burton assigns, restated, that the district court erred in (1) admitting Stott's testimony regarding the collected hair sample over a hearsay objection; (2) allowing Stott's testimony regarding marijuana, hashish, drug paraphernalia and a sawed-off shotgun over a relevancy

objection; (3) allowing Stott's testimony regarding these same items over a Rule 404 objection; (4) admitting the photograph of hair strands without proper foundation; (5) admitting the photograph depicting marijuana and drug paraphernalia over a Rule 403 objection; and (6) imposing an excessive sentence.

## V. STANDARD OF REVIEW

Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds. *Arens v. NEBCO, Inc.*, 291 Neb. 834, 870 N.W.2d 1 (2015).

When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015). It is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under Neb. Evid. R. 403 and 404(2), Neb. Rev. Stat. §§ 27-403 and 27-404(2) (Reissue 2008), and the trial court's decision will not be reversed absent an abuse of discretion. *State v. Torres*, 283 Neb. 142, 812 N.W.2d 213 (2012). See, also, *Johnson, supra* (trial court exercises its discretion in determining whether evidence is relevant and whether its prejudicial effect substantially outweighs its probative value).

The admission or rejection of photographs in evidence is largely within the discretion of the trial court. In the absence of a showing of an abuse of discretion, error may not be predicated upon such a ruling. *Steele v. Sedlacek*, 267 Neb. 1, 673 N.W.2d 1 (2003). See, also, *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008) (because authentication rulings are necessarily fact specific, a trial court has discretion to determine whether evidence has been properly authenticated; therefore, an appellate court reviews a ruling on authentication for abuse of discretion).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015).

An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015).

## VI. ANALYSIS

### 1. ADMISSIBILITY OF STOTT'S HAIR SAMPLE TESTIMONY

Burton challenges the admissibility of Stott's testimony regarding the location and testing of a blond hair sample. Burton's hearsay objection to this testimony was overruled, and was followed by a limiting instruction given by the court.

### (a) Hearsay Objection

Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015); Neb. Rev. Stat. § 27-801(3) (Reissue 2008). When overruling a

hearsay objection on the ground that testimony about an out-of-court statement is received not for its truth but only to prove that the statement was made, a trial court should identify the specific nonhearsay purpose for which the making of the statement is relevant and probative. *State v. Baker*, 280 Neb. 752, 789 N.W.2d 702 (2010).

### *(i) Location of Hair Sample*

Stott testified about photographic evidence introduced at trial which he described as depicting "a blond or strawberry blond hair that was located between the couch and the coffee table in the approximate area where (S.M.) . . . had stated that part of the events had taken place."

Burton maintains on appeal that this statement was inappropriately offered for its truth to corroborate S.M.'s testimony regarding the location of the assault. The State argues that this statement was offered to show why hair was collected between the couch and coffee table, not for the truth of S.M.'s statement.

Given our review of the record, we find that Stott's testimony pertaining to the location of the hair sample was not hearsay and therefore was admissible. The statement was not offered to prove the truth of S.M.'s testimony. Rather, it was offered to prove that S.M. stated to police where the assault allegedly occurred, which in turn caused police to search this location in the residence for evidence.

The district court properly identified the specific nonhearsay purpose for which the making of S.M.'s statement was relevant and probative. Specifically, the court responded to Burton's hearsay objection by clarifying for the jury that "we're explaining what the officer was told as to where the location of the individual was, and we're not accepting that as the truth of (S.M.'s) statement to him; only the fact that he was told that as part of the explanation as to why they were picking up the hair or looking in that area." These factual findings of the court supporting its ruling were not clearly erroneous. The district court did not err in admitting Stott's statements regarding the location of the hair sample over Burton's hearsay objection.

### *(ii) Testing of Hair Sample*

Stott later testified that a crime lab analysis produced "no confirmation" regarding the hair sample, once again over a hearsay objection but without a limiting instruction. Burton argues that this statement "appears to suggest that the state used due diligence in handling the forensic evidence" and was an inappropriate summary of an analyst's findings without use of proper firsthand testimony. The State asserts that even if this statement was hearsay, it was not prejudicial to Burton because the statement was favorable to him, particularly due to evidence that a blond haired woman was present when S.M. returned the following day to search for her license. The district court did not provide a clear explanation supporting its decision to overrule Burton's hearsay objection to this testimony. However, assuming without deciding, that this statement amounted to inadmissible hearsay, we conclude that admitting it was harmless error.

### (b) Harmless Error

An erroneous admission of evidence is considered prejudicial to a criminal defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v.*

*Brouillette*, 265 Neb. 214, 655 N.W.2d 876 (2003). In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. *Brouillette, supra; State v. Pangborn*, 286 Neb. 363, 836 N.W.2d 790 (2013), *State v. Richardson*, 285 Neb. 847, 830 N.W.2d 183 (2013). Harmless error review looks to the basis on which the jury actually rested its verdict; the inquiry is not whether in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the actual guilty verdict rendered was surely unattributable to the error. *Johnson, supra*. See, also, *State v. Freemont*, 284 Neb. 179, 817 N.W.2d 277 (2012). See also *State v. Baker*, 280 Neb. 752, 765-766, 789 N.W.2d 702, 712-713 (2010) (harmless error review applies to the denial of hearsay objection).

The State claims that Stott's testimony that testing of the hair sample provided "no confirmation" was not prejudicial to Burton because it demonstrates that either no testing of the sample occurred or the tests were unable to prove the hair belonged to S.M. Both of these inferences are favorable to Burton, particularly considering that S.M. later saw a blond haired woman at Owens' residence.

Upon our review, we determine that the admission of such testimony was harmless beyond a reasonable doubt. The jury most certainly based their decision upon the other strong and competent evidence presented by the State, most importantly S.M.'s detailed testimony about the assault. This verdict was clearly unattributable to any error that occurred in admitting this testimony. Therefore, because the State carried its burden of demonstrating that the alleged error was harmless beyond a reasonable doubt, we find that the potentially erroneous admission of such testimony was not prejudicial to Burton.

Burton's first assignment of error is without merit.

### 2. ADMISSIBILITY OF TESTIMONY REGARDING DRUGS, PARAPHERNALIA, AND SHOTGUN

Burton argues that the court erred in allowing Stott to testify that the officers found marijuana, hashish, drug paraphernalia, and a sawed-off shotgun in the residence during the execution of a search warrant. Burton made a relevancy objection to this testimony during trial.

### (a) Relevancy Objection

Under Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 2008), irrelevant evidence is inadmissible. *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015). Under Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 2008), relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Id*. Relevancy requires only that the degree of probativeness be something more than nothing. *State v. Lavalleur*, 289 Neb. 102, 853 N.W.2d 203 (2014).

### (i) Relevance of Marijuana Testimony

Burton asserts that locating marijuana in the house several days after the alleged assault has no tendency to prove the facts regarding smoking marijuana on the night of the alleged assault as testified to by S.M. The State in turn argues that the testimony about finding marijuana was

relevant to corroborate S.M.'s testimony, specifically her references to drug use and Burton blowing smoke into her face, and to demonstrate that she was "mentally or physically incapable of consent." Further, the State argues that the timing of the search goes to weight rather than admissibility.

We conclude that Stott's testimony regarding marijuana located in Owens' residence was sufficiently probative to qualify as relevant evidence. Such testimony supported S.M.'s testimony that Owens retrieved marijuana from a bag in his room; and that Burton, Owens, and S.M. smoked a marijuana joint while at the residence. These were facts of consequence, and Stott's testimony made the existence of such facts more probable than without such evidence. The court's decision to allow such testimony was not an abuse of discretion.

*(ii) Relevancy of Drug Paraphernalia*

Burton argues that Stott's testimony regarding finding drug paraphernalia was also irrelevant and inadmissible. Specifically, he claims that such a statement did not corroborate S.M.'s testimony.

In his testimony, Stott referred generally to finding items of paraphernalia without specifically identifying the items. Stott later mentioned rolling papers when describing the photographic evidence. S.M. testified that Owens rolled "a joint" when the group was sitting in the living room. S.M. did not testify regarding any other forms of drug paraphernalia. We conclude, as we did above, that the testimony concerning the drug paraphernalia was relevant and admissible.

iii. Relevancy of Hashish and Shotgun Testimony

Burton argues that Stott's testimony that the officers found hashish and a sawed-off shotgun was not relevant. Unlike the marijuana and drug paraphernalia discussed above, there was no evidence in the record that hashish was consumed on the night of the assault or about the existence of a sawed-off shotgun in the residence. S.M. testified to being aware that Burton's family has "contact with guns," but she never claimed to have seen a gun during the events at issue. No other evidence beyond Stott's testimony regarding such items exists in the record.

With regard to the reference to hashish, the State generally argues that the testimony about finding hashish was relevant to corroborate S.M.'s testimony about drug usage on the night in question. The State does not assert that the testimony about finding the shotgun was relevant. However, the State argues that even if admitting evidence regarding finding hashish and the shotgun was error, any such error was harmless error beyond a reasonable doubt.

The testimony regarding these items came in as follows:

> STATE: What did you collect?
> Officer Stott: We located several items within the residence to include marijuana, hashish, drug paraphernalia . . .
> Burton's Attorney: Judge, object on relevance, 404.
> Court: Overruled. You may continue.
> Officer Stott: Other items of drug paraphernalia, a sawed-off shotgun, items in the little girl's bedroom . . .

Assuming, without deciding, that Stott's testimony regarding the hashish and shotgun was irrelevant, we conclude that the admission of such brief testimony was harmless beyond a reasonable doubt. See *State v. Johnson*, 290 Neb. 862, 883-885, 862 N.W.2d 757, 774-775 (2015) (harmless error review applies to the admission of irrelevant evidence).

First, the brief reference to hashish was not prejudicial to Burton. Such evidence, although suggestive of drug use, was cumulative to other admissible evidence that marijuana was present and consumed on the night of the assault. Given the detailed evidence of the presence of marijuana and paraphernalia in the residence, the jury's verdict was surely unattributable to any error in allowing the testimony regarding hashish, which was harmless beyond a reasonable doubt.

With regard to the testimony about recovering a sawed-off shotgun, this testimony was also quite brief and no further evidence was adduced regarding the shotgun. However, the State did mention the shotgun during closing arguments. While reiterating that S.M. was scared on the night of the assault, in part due to the reputation of Burton and Owens concerning Chicago, the State's attorney indicated that the "officer told you that he found a sawed-off shotgun when they did a search of that house," implying that such fear was reasonable. No objection, argument of prosecutorial misconduct, or motion for mistrial was made by defense counsel in response to this statement.

The State's case demonstrating that a sexual assault occurred was strong. The jury's guilty verdict was unlikely to have been impacted by the brief reference to the shotgun in the testimony and at closing argument. Therefore, the improper admission of the shotgun evidence was inconsequential, harmless beyond a reasonable doubt, and not prejudicial to Burton.

Burton's second assignment of error is without merit.

(b) Rule 404 Objection

We next consider Burton's assertion that Stott's testimony about finding marijuana, drug paraphernalia, hashish, and a sawed-off shotgun in the residence amounted to inadmissible evidence of other bad acts in violation of Rule 404.

Bad act evidence is evidence of other crimes, wrongs, or acts, aside from the crime charged, which tend to prove the character of a person and to show that he or she acted in conformity therewith when committing the charged crime. *State v. Aguilar*, 264 Neb. 899, 652 N.W.2d 894 (2002). Evidence of other bad acts falls into two categories under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 1995), according to the basis of the relevance of the acts: (1) evidence which is relevant only to show propensity, which is not admissible, and (2) otherwise relevant (nonpropensity) evidence, which is admissible. *State v. Kuehn*, 273 Neb. 219, 728 N.W.2d 589 (2007). See, also, *State v. Faust*, 265 Neb. 845, 660 N.W.2d 844 (2003). (evidence of bad acts of an accused might be admissible if it has independent relevance under Neb. Rev. Stat. § 27-404(2) (Reissue 1995)); *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011) (bad act cannot be independently relevant for a proper purpose if that purpose was not at issue in the case).

An appellate court reviews the admission of other bad acts evidence under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 1995), by considering (1) whether the evidence was relevant, (2) whether the evidence had a proper purpose, (3) whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice, and (4) whether the trial

court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted. *Kuehn, supra*.

Bad acts that form the factual setting of the crime in issue or that form an integral part of the crime charged are not part of the coverage under Neb. Evid. R. 404(2). *State v. Baker*, 280 Neb. 752, 789 N.W.2d 702 (2010).

Burton admits that testimony about the existence of marijuana may form part of the factual setting and thus not be inadmissible bad act evidence. However, he claims that only the marijuana joint smoked while S.M. was at the residence would qualify. The State asserts that the locating of marijuana in the residence is relevant for the purpose of corroborating S.M.'s testimony and inability to consent, and the 2-day period between use and discovery goes to weight rather than admissibility.

Upon our review, we find that Stott's testimony regarding the seizure of marijuana and drug paraphernalia was properly admitted. The discovery of marijuana and drug paraphernalia was relevant and probative with regard the S.M.'s testimony. It corroborated her description of drug use at the residence, which was a proper purpose for such evidence. Further, the discovery of marijuana and drug paraphernalia (including the rolling papers) was part of the factual setting of the crime. Such evidence was clearly relevant for several permissible purposes, and its admission was not an abuse of discretion.

Assuming without deciding that admission of the evidence of discovery of hashish and a sawed-off shotgun violated Rule 404, we nevertheless find that it was harmless error, for the same reasons articulated above in our discussion of relevance. The same harmless error standards apply to the erroneous admission of both irrelevant evidence and improper evidence of other bad acts. See *Johnson, supra*; *State v. Sutton*, 16 Neb. App. 185, 195-196, 741 N.W.2d 713, 722 (2007) (harmless error review applies to admission of evidence of other bad acts).

Burton's third assignment of error is without merit.

### 3. ADMISSIBILITY OF HAIR STRANDS PHOTOGRAPH

Burton argues that there was insufficient foundation for the admission of the photograph depicting hair strands located between the couch and coffee table. Specifically, Burton claims that the State failed to establish foundation by presenting facts indicating that the hairs belonged to S.M. He argues that such foundation was particularly necessary because of the presence of another blond haired woman at the residence prior to the seizure of the hair sample. Upon our review, we conclude that proper foundation for the photograph was established through the testimony on S.M. and Stott.

Neb. Rev. Stat. § 27-901 (Reissue 2008) does not impose a high hurdle for authentication or identification. *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008). A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity; if the proponent's showing is sufficient to support a finding that the evidence is what it purports to be, the proponent has satisfied the requirement of the authentication rule. *State v. Taylor*, 282 Neb. 297, 803 N.W.2d 746 (2011).

Rule 901(2)(a) provides that authentication or identification can be achieved through "testimony that a matter is what it is claimed to be." Neb. Rev. Stat. § 27-901(2)(a) (Reissue 2008).

Even if direct, eyewitness testimony is absent, the contents of photographic evidence itself, together with such circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate the evidence sufficiently to justify its admission pursuant to this section. *State v. Anglemyer*, 269 Neb. 237, 691 N.W.2d 153 (2005).

S.M. testified that the photographed hair was similar in length and color to her own at the time of the incident. Stott testified that the hair was found in the location where S.M. claimed the initial assault occurred and where Owens had stepped on her hair. This testimony establishes the photograph as reliable evidence and satisfies the low evidentiary hurdle for the authentication of photographs.

Lastly, the presence of another blond haired woman in the residence goes towards the weight the jury would give such evidence, not its admissibility. The admission of this photograph was not an abuse of discretion.

Burton's fourth assignment of error is without merit.

### 4. ADMISSIBILITY OF DRUG PHOTOGRAPH

Burton argues that the photograph depicting a small baggie of marijuana and rolling papers was improperly admitted over a Rule 403 objection. He argues that the probative value of the photograph is outweighed by unfair prejudice.

Neb. Rev. Stat. § 27-403 (Reissue 2008) provides that evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *State v. Sellers*, 279 Neb. 220, 777 N.W.2d 779 (2010). See, also, *State v. Fick*, 18 Neb. App. 666, 790 N.W.2d 890 (2010). The fact that evidence is prejudicial is not enough to require exclusion under this section, because most, if not all, of the evidence a party offers is calculated to be prejudicial to the opposing party; it is only the evidence which has a tendency to suggest a decision on an improper basis that is unfairly prejudicial under this section. *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009).

Burton claims that the probative value of this photograph is low because testimony on the topic of drugs and drug paraphernalia was previously introduced at trial, making the photograph cumulative evidence; the contents depict paraphernalia other than that contained in a marijuana joint; and such evidence was located two days after the alleged assault. Burton claims that such evidence of illegal drug use was extremely and unfairly prejudicial to him, suggesting bad character.

We first address the contents of the photograph. Burton provides no description regarding any other claimed items of paraphernalia in the photograph beyond rolling papers. After reviewing the photograph and considering Stott's description of said photograph, we find Burton's assertion that the exhibit depicted paraphernalia unrelated to S.M.'s testimony to be incorrect. The only paraphernalia visible in the photograph is the rolling papers, which is probative evidence supporting S.M.'s testimony that they smoked a joint prior to the assault.

Upon our review, we find that the probative value of the photograph exceeded any danger of unfair prejudice. Such evidence was highly probative for corroborating S.M.'s testimony that the group smoked a marijuana joint at the residence. Further, it was probative of S.M.'s alleged

resulting diminished mental capacity and susceptibility to assault. Such evidence did not have a tendency to suggest a decision on an improper basis that is unfairly prejudicial.

Lastly, the locating of the marijuana and rolling papers two days after the incident goes to the weight given such evidence by the jury, not its admissibility. The district court did not abuse its discretion in admitting this photograph.

Burton's fifth assignment of error is without merit.

### 5. APPROPRIATENESS OF SENTENCE

Burton was convicted of first degree sexual assault, a Class II felony. Neb. Rev. Stat. § 28-319. The court sentenced Burton to incarceration for a period not less than 7 years nor more than 15 years, with credit for 288 days served.

Class II felonies are punishable by up to 50 years' imprisonment, with a minimum of one year imprisonment. Neb. Rev. Stat. § 28-105(1), § 29-2204(1)(a)(ii)(A) (Cum. Supp. 2014). The sentence imposed by the district court is clearly within the statutory limits.

Burton asserts on appeal that the sentence imposed was excessive and amounted to an abuse of discretion by the district court, citing to no prior sexual offences or "violence or aggression against women" on his record.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, an appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Collins*, 292 Neb. 602, 873 N.W.2d 657 (2016). In imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The sentencing court is not limited to any mathematically applied set of factors. *State v. Dominguez*, 290 Neb. 477, 860 N.W.2d 732 (2015). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).

The record reveals that the district court did not abuse its discretion in sentencing Burton. The court reviewed the presentence investigation report (PSR), noted several corrections to the report identified by Burton's attorney, listened to counsels' arguments, and considered Burton's own testimony at the sentencing hearing maintaining his innocence. Further, the court had an opportunity to consider all the relevant sentencing factors based upon the information contained in the PSR.

The sentence imposed upon Burton was within the statutory limits, and the district court did not abuse its discretion in considering the relevant factors and legal principles. Therefore, we will not disturb his sentence.

Burton's last assignment of error is without merit.

## VII. CONCLUSION

Upon our de novo review, we find that the district court did not err in its admission of Officer Stott's testimony regarding the hair sample over a hearsay objection. Further, the court did not abuse its discretion in admitting Stott's testimony regarding items located during execution of a search warrant over relevancy and Rule 404 objections. To the extent such admissions were inappropriate, they amounted to harmless error within the context of the entire record. Similarly, the court properly admitted photographic evidence over foundation and Rule 403 objections. Lastly, the sentence was not excessive and did not constitute an abuse of discretion by the court. We affirm the conviction and sentence.

AFFIRMED.